All the judges concurring, except Hunt, Ch. J., and Lott, J., who were for reversal.

Order affirmed.

---

E. Darwin Litchfield, Collector, &c., Respondent, v. Samuel Vernon, Appellant.

The People ex rel., Stephen Crowell et al., Appellants, v. John D. Lawrence and others, Commissioners, Respondents.

By an act of the legislature, passed in 1859, it was provided that the common council of the city of Brooklyn might, upon an application of a majority of the owners of land in the district proposed to be assessed by the act, apply to the Supreme Court, at Special Term, for the appointment of three commissioners, who were authorized to contract with the Long Island Railroad Company, or its assigns, to close the entrances of their tunnel in Atlantic street, Brooklyn; to pave the street at its proper grade; to lay rails upon the surface of the street and run horse-cars from the foot of Atlantic street to the city line; to relinquish and surrender their right to use steam within the city limits. In compensation for this, the commissioners were authorized to assess certain property within the vicinity specified in the act, not to exceed $125,000 (and expenses not to exceed $5,000), which the railroad company were to receive in full for such change.

Commissioners having been appointed upon a petition of the common council to the court, verified by the mayor of the city, stating that a majority of the owners had petitioned under the act, by a further act passed in 1860, they (the commissioners), were directed to assign to the railroad company, or its assigns, the assessment list, on condition that the latter agreed to accept such assignment in lieu of the moneys to be paid them under the contract, and agreed to discontinue the use of steam in the city, close up the tunnel and lay the railway; and the railway company, or its assigns, were

authorized to receive from the persons or owners assessed the sum assessed, and to appoint a collector to collect sums unpaid.

The act of 1859 was entitled " An act to provide for the closing of the entrance of the tunnel of the Long Island Railroad Company in Atlantic street, in the city of Brooklyn, and restoring the street to its proper grade, and for the relinquishment by said company of its right to use steam power within the said city." The title of the act of 1860 was entitled " An act in relation to the collection, payment and application of certain assessments in the city of Brooklyn."

The assignee of the railroad company, the work having been done and the assessment made, appointed the plaintiff collector of the assessment, who, by a further act of the legislature passed in 1863, was empowered to sue the persons assessed for amounts unpaid.

The plaintiff, having brought this action against the defendant as one of the owners assessed, to recover the amount of his assessment—*Held*, that the act of 1859 was constitutional and valid, as an exercise of the taxing power, and not of eminent domain.

It is the settled law of this State that the power of taxation and of apportionment of taxation are vested in the legislature, and are identical and inseparable; that there is no constitutional restraint upon the exercise of this power; and that it includes the right and power of determining what portion of a public burden shall be borne by any individual or class of individuals. MASON, J.

It is within the power of the legislature to impose a tax upon a locality for any purpose deemed by it proper, and this power is not restricted by the Constitution. GROVER, J.

*Held* further, that the title to such act embraces but one subject, which was expressed in the title, and is not therefore void within section sixteen of article third of the Constitution. It is sufficient that the title express the subject, and not the provisions of the act, or the details by which its purpose is to be accomplished. (JAMES, J., *contra.*)

*Held* further, that it being provided by the original act imposing the assessment as a tax, that it should be enforced in the same manner as county taxes, as to which parties assessed are personally liable, the act of 1863, authorizing the plaintiff to sue and to enforce such personal liability, was valid.

*Held* further, that the application to the common council, of a majority of the owners in the district affected being indispensable to the validity of all subsequent proceedings under the act, and the burden being upon the plaintiff to show that such majority had applied, the petition of the common council, verified by the mayor, to the Supreme Court, was no evidence thereof in this action, and the finding of the court below that such majority had applied to the common council was, therefore, wholly unsupported by the proofs, and error, for which the judgment in favor of the plaintiff must be reversed. (HUNT, Ch. J., and MASON, J., *contra.*)

(Argued June 19th, 1869, and decided September 24th, 1869.)

THE first above entitled case is an appeal from a judgment at the General Term in the second district, affirming a judgment rendered on trial without a jury, before Judge BARNARD, at the Kings county Special Term, in favor of the plaintiff.

In the year 1859 there was a tunnel through about a mile of the length of Atlantic street, in the city of Brooklyn, over which there was a paved street on the regular grade. This tunnel was used by the Long Island Railroad Company, as assignees of the Brooklyn and Jamaica Railroad Company, for the purpose of running with steam power their cars down to the terminus of the road, the foot of Atlantic street, Brooklyn.

This railroad extended from Jamaica, and intermediate points, through Atlantic street, to its terminus at the East River. On the trial of the issues herein, the defendant below offered to prove that the closing of this tunnel and the removal of steam from the street conferred no benefit, but rather inflicted injury upon the property in question. At all events, opinion was divided upon the question, whether or not the existence of that tunnel and the use of steam upon the said street were beneficial or injurious to the interest of the property owners upon the said street, or those contiguous thereto. The offer was excluded, and the defendant excepted.

On the 19th of April, 1859, an act was passed by the legislature of the State of New York (Session Laws, pp. 1109, etc., chap. 484), entitled "An act to provide for the closing of the entrances of the tunnel of the Long Island Railroad Company, in Atlantic street, in the city of Brooklyn, and restoring that street to its proper grade, and for the relinquishment by the railroad company of its right to use steam power within said city."

Which act enacted as follows:

Section one provided that the common council of the city of Brooklyn shall, upon petition or application of a majority of the owners of land in the district proposed to be assessed by

the said act, make application to the Supreme Court, at a Special Term, for the appointment of three commissioners under act of April 17th, 1854.

Section two provides that the commissioners shall qualify and file a bond.

Section three provides that the commissioners are authorized and empowered to enter into a contract in writing with the Long Island Railroad Company, or its assigns, that they shall close the entrances of the tunnel in Atlantic street, in the city of Brooklyn, and pave and regulate the same to its proper grade; and also for the relinquishment by said company, and its assigns, of the right to use steam power within said city, and that they shall lay rails upon the surface of street, and run horse-cars from foot of Atlantic street to city line. And that the said Long Island Railroad Company, and its assigns, shall receive, as compensation for compliance with such contract, and the surrender of the right of said company and the Brooklyn and Jamaica Railroad Company to use steam within the city limits, the sum of not exceeding one hundred and twenty-five thousand dollars, which sum shall be assessed, together with the expenses of collecting the same, commissions, etc., which may not have exceeded five thousand dollars, upon the lands and premises (except those of religious denominations) within the following districts: Commencing at the East river at the foot of Atlantic street, and including the lot upon east side of Atlantic street and Atlantic avenue, or Schuyler street, to the city line; and commencing at the city line at the end of Pacific and Dean streets, and including the lots upon east side of Pacific and Dean streets to Smith street. Lots fronting on all streets and avenues crossing said Atlantic street and avenue, or Schuyler street, comprised in the foregoing limits, shall be included in said assessment district.

Section four provides that the street or streets, to be used by the company are to conform to grade lines.

Section five provides that the contract, when duly executed and acknowledged, shall be recorded in the office of the register

of Kings county, and that, thereupon, it shall be the duty of the commissioners to determine the amount for which the assessment shall be levied, not exceeding the sum of one hundred and thirty thousand dollars, and to estimate the amount of benefit to be derived therefrom by the owners of the land within the assessment limits, and to assess the same.

Section six specifies the powers and duties of the commissioners, and provides, that upon the confirmation of their report, the right to use steam within city limits by the Brooklyn and Jamaica Railroad Company and Long Island Railroad Company shall cease, and that all laws allowing the use of steam within city limits, to said companies, are repealed.

Section seven provides, that upon compliance with the contract on the part of the railroad company, the commissioners are to appoint a collector, and sets forth the powers and duties of the collector.

Section eight provides how assessments are to be paid.

Section nine empowers commissioners to take legal measures to enforce fulfillment on the part of the Long Island Railroad Company, or its assigns, of the said contract.

Thereupon the common council of the city of Brooklyn presented a petition, verified by the mayor, to the Special Term of the Supreme Court of the county of Kings, to appoint commissioners under said act of April 19th, 1859. The only evidence before the court, that a majority of the property owners within the assessment district had petitioned the common council, to make said petition to the Supreme Court, was the statement contained therein. The court below, at Special Term, excluded all evidence which would tend to show that a majority of the property owners had not, in point of fact, signed any such petition to the common council, and which according to the act of April 19th, 1859, must form the basis of the action of the common council in the premises. Upon the presentation of the petition, and proof of notice, etc., the Special Term of the Supreme Court of the county of Kings, on or about the 1st day of August, made an order appointing John Winslow,

Theodore F. King, and John D. Lawrence commissioners as aforesaid. The said commissioners then took their oaths of office, and filed the bonds required by the statute.

There was thereupon a further and other act of the legislature, passed March 23d, 1860, entitled "An act in relation to the collection, payment, and application of certain assessments in the city of Brooklyn" (Sessions Laws, 1860, pp. 173, etc., chap. 100), making it the duty of the commissioners appointed under the act of April 19th, 1859, to assign the assessment list, and all the right to collect and receive payment of the said assessment, to the Long Island Railroad Company, or its assigns, on condition that the Long Island Railroad Company, or its assigns, deliver to the said commissioners an agreement in writing agreeing to accept said assignment, and the moneys to be received thereunder, in lieu of the moneys to be paid them under said contract, and agreeing to discontinue the use of steam within the city limits; agreeing also to close the tunnel on Atlantic street, to restore the said street to its proper grade, to lay a railway thereon, and to do such other acts and things as were required by the said act of April 19th, 1859.

It is further provided, among other things, by the last mentioned act, that, upon receiving the said assignment, the Long Island Railroad Company, or its assigns, are authorized and empowered to receive for their own use, from each of the persons or owners named in said assessment, or liable to pay any portion of the same, and that the said Long Island Railroad Company, or its assigns, may appoint a collector to collect so much of the said assessment as shall not be voluntarily paid as hereinbefore provided, with the same power, after taking oath and giving security, as if the said collector had been appointed under the ninth section of the act of 1859.

Whereupon (April 26th, 1860) the Long Island Railroad Company assigned, by virtue of a-certain agreement, to the Brooklyn and Jamaica Railroad Company, for certain considerations mentioned in said assignment, all the right and

title of said Long Island Railroad Company in and to said tunnel on Atlantic street, and surrendered by said agreement all and every interest, in and to, a certain lease to the said Long Island Railroad Company from the said Brooklyn and Jamaica Railroad Company. And the said Brooklyn and Jamaica Railroad Company therefore became vested with all rights possessed by the said Long Island Railroad Com pany. And thereupon, about the same day and year, the commissioners made the assignment contemplated by the act of March 23d, 1860, to the Brooklyn and Jamaica Railroad Company.

July 28th, 1860, the commissioners made their report, certifying that the whole cost of the improvement was $129,801.81, of which amount the sum awarded to the Long Island Railroad Company, or its assigns, amounted. to $125,000.

September 27th, 1861, the report was confirmed.

January 19, 1863, the plaintiff, E. Darwin Litchfield, was appointed (by the Brooklyn and Jamaica Railroad Company) collector of the assessment.

April 29th, 1863, an act was passed by the legislature of the State (Session Laws of 1863, p. 526, chap. 298), entitled "An act relating to an assessment in Brooklyn," directing that it shall be the duty of the collector of the assessments, made in pursuance of chapter 484 of the laws passed in the year 1859, to deposit in the office of the collector of taxes of the city of Brooklyn the original assessment list, to cancel every assessment already paid, and that the amounts which the several persons named in said assessment list are liable to pay may be sued for and recovered by the collector of said assessment, provided that in any action brought for this purpose, no costs, except disbursements, shall be recovered by said collector, unless the amount recovered exceeds two hundred and fifty dollars.

It is under the last provision of the last mentioned act, that the proceedings *in personam* against the defendant have been commenced and prosecuted in this

court by the plaintiff, as collector, etc., of said. assessments.

The defendant offered to show that a majority of the owners of land within the district did not sign the petition. The plaintiff's counsel objected to such evidence; the court excluded it, and the defendant excepted.

There is no evidence in the case to show that a majority of the owners of land in the assessed district signed the land owners' petition except the official petition of the mayor.

The defendant offered to show that the scheme was for the benefit of the railroad company, and not the land owners; the evidence was excluded, and the defendant excepted.

The defendant twice moved to dismiss the complaint. The motions were denied, and the defendant excepted.

The judgment entered on the authority of the finding is not only for a sale of the lot assessed, but against the defendant personally for any deficiency.

Eight other appeals were submitted, brought by other defendants, from judgments recovered against them by the plaintiff as collector.

The second above entitled action is an appeal, brought by the relators, who are owners in the district affected by these assessments, from a judgment of the General Term of the second judicial district of the Supreme Court, in favor of the defendants (who are the commissioners appointed by the Special Term under the act of 1859), upon a *certiorari*, bringing up for review the proceedings of the said commissioners with reference to the contract with the railroad companies, the assessments, and assignments thereof.

*Simon Stern*, for the appellants in both cases, insisted that the act of 1859 was unconstitutional and void, as not being within the exercise of the taxing power, and cited 39 Pennslvania, 70; Opinion of Judge Woodruff *in re Peter Townsend*, 39 New York Reports, page 174; *Matter of Oliver Lee Co.'s Bank*, 21 New York, 9; *Power* v. *Ber-*

*gen* (2 Selden, 366) ; *Williams* v. *Leland* (6 Peters, 657) ; Opinion of Hamilton, in 84th number of *Federalist ; Sharpless* v. *Mayor of Philadelphia* (21 Penn. State R., 167) ; Locke on Government, § 140 ; Id., §§ 134, 135 and 137; *Beattie* v. *Holan* (4 Peters, 152) ; *Van Horn's Lessee* v. *Dorants* (2 Dallas, 316) ; Montesquieu, Esprit des Lois, 13th book, 1st chapter ; Report of French Assembly, 1793, quoted by Garnier in his Traité de Finance ; Smith's Wealth of Nations, book 5, chap. 2, part 2 ; Free Government, by Johnson ; Locke on Government ; Lieber on Civil Liberty, page 129 ; Say's Political Economy, book 1, chap. 14 ; Id., chap. 8, book 2 ; J. S. Mill's Political Economy (Appleton's edition), 5th book, 5th chapter, § 4 ; Confirmation Charter, Edward I, article 6 ; 2 Burrill's Law Dictionary, page 967 ; *Philadelphia Association* v. *Wood* (39 Penn. State R., 82) ; *Satterlee* v. *Matherson* (2 Peters, 412).

The act is unconstitutional as taking property of a person without due process of law. A statute is unconstitutional which authorizes the private property of one man to be taken against his consent for the private use of another. (Coke 2 Inst., 50 ; 19 Wend, 676 ; *Taylor* v. *Porter,* 4 Hill, 140 ; *Matter of Fourth avenue,* 3 Wendell, 452 ; *Matter of Albany street,* 11 Wendell, 149 ; *Matter of John and Cherry street,* 19 Wend., 657 ; *Taylor* v. *Porter,* 4 Hill, 140 ; *Varick* v. *Smith,* 5 Paige, 134 ; *Cochran* v. *Vangurley,* 20 Wend., 365 ; *Embury* v. *Conner,* 3 Comstock, 511 ; *People* v. *Mayor of Brooklyn,* 6 Barbour, 218 ; *Matter of Canal street,* 11 Wendell, 155 ; *Matter of Flatbush avenue,* 1 Barbour, 291 ; *Sharpless* v. *Mayor, etc.,* 21 Penn., 169.)

It is void, as in violation of section 7 of article 1 of the constitution. (*Matter of Albany street, supra ; Cheaney* v. *Hooser,* 9 B. Monroe, 343 ; *Pierce's Heirs* v. *Patten,* 7 B. Monroe ; *Warner* v. *People,* 2 Den., 275 ; 27 Cal., 613, 630.)

It is void, as in violation of the constitutional requirement that no private or local bill shall embrace more than one subject, which shall be expressed in the title. (*People* v.

*Hill*, 35 N. Y., 449 ; *People* v. *Brien*, 38 N. Y., 193.) And the act of 1860 is also in plain conflict with this clause of the constitution.

If the act is an exercise of the taxing power, it is void, as not complying with the requirement that every law imposing a tax must distinctly state the tax and the object to which it shall be applied.

The act of 1863, giving the plaintiff power to sue, is repugnant to the constitution. (*People* v. *Draper*, 15 N. Y., 32 ; *Warner* v. *People*, 2 Den., 275.)

As points applicable peculiarly to the first entitled case, Mr. Stern urged that the defendant was not personally liable to pay the assessment ; it was intended only as a charge on the land in the original act, and the act of 1863, changing it to a personal liability is unconstitutional. (*Sharp* v. *Speir*, 4 Hill, 76, 84 ; *Creighton* v. *Manson*, 27 Cal. R., 613 ; *Sharp* v. *Johnson*, 4 id., 92.)

It was necessary for the plaintiff to establish, as a jurisdictional fact, that a majority of the owners had applied to the common council, and the defendant could not be concluded on this question by *ex parte* proceedings. (*Matter of Trustees*, 31 N. Y., 529 ; *Sharp* v. *Speir*, 4 Hill, 83 ; *People* v. *Mayor*, 2 Hill, 9 ; *Matter of Mount Morris*, 2 Hill, 14.)

*James Emott*, for the respondents, as to the constitutionality of the act of 1859, cited *Sun Insurance Company* v. *Mayor* (5 Sandf., 10) ; S. C., 4 Seld., 241 ; *Conner* v. *Mayor, etc.* (1 Seld., 255) ; *People* v. *McCann* (16 N. Y., 58) ; *Brewster* v. *City of Syracuse* (19 N. Y., 116) ; *Sinclair* v. *Jackson* (8 Cow., 543) ; *Embury* v. *Conner* (3 Comst., 523) ; *Baker* v. *Brandon* (6 Hill, 47) ; *People* v. *Murray* (5 id., 468) ; *People* v. *Mayor of Brooklyn* (4 Comst., 149) ; *Thomas* v. *Leland* (24 Wend., 65) ; *Town of Guilford* v. *Suprs. of Chenango* (3 Kern., 143) ; *Howell* v. *City of Buffalo* (4 Trans, Appls., 505).

On the question of the sufficiency of the evidence of the application of a majority of the owners, he cited *In re Fal-*

*coner* (4 Hill, 508); *People* v. *City of Rochester* (21 Barb., 570).

GROVER, J. The question whether the act of 1859, chap. 484 of Laws, page 484, is constitutional and void, depends upon the inquiry whether the assessments thereby authorized are made in the exercise of the taxing power of the State or in that of eminent domain. If the former, the counsel of the appellant concedes them to be valid. See *People* v. *Mayor of Brooklyn* (4 Comst., 419); *The Sun Insurance Company* v. *The Mayor, etc.* (N. Y., 4 Seld., 241); *Town of Guilford* v. *The Board of Supervisors, Chenango County* (3 Kern., 143). If the latter, it is entirely clear that the act is void. An examination of the case shows that, at the time of the passage of the act, the Long Island Railroad Company had the right of way in a tunnel constructed in Atlantic street, Brooklyn, for a railroad operated by steam, and were operating their road thereon; that the legislature deemed it expedient to close the tunnel, grade the street, lay a track upon the surface to be operated by horse power, etc., and to authorize the making of a contract with the railroad company for doing the work and effecting the changes for a sum not exceeding $125,000. To carry into effect this design, the act in question was passed, authorizing the commissioners, whose appointment was provided for in the act, to make the contract, and to make an assessment for the payment of the contract price, together with the incidental expenses upon the lands and premises situate in the district specified in the act. This local assessment for those purposes, it is apparent, was based upon the ground that the territory subjected thereto would be benefited by the work and change in question. Whether so benefited or not, and whether the assessment of the expense should for this, or any other reason, be made upon the district, the legislature was the exclusive judge. The Constitution has imposed no restriction upon their power in this respect. See cases cited, *supra*. The counsel for the

appellant concedes that this is true so far as closing the tun
nel and grading the street are concerned, but insists that
compensating the company for abandoning the use of steam
and substituting therefor horse power, does not come within
the like principles. I am unable to see upon what ground
the power of the legislature can be limited in respect to the
latter, consistently with the doctrine held by this court, in
*The Town of Guilford* v. *The Board of Supervisors, supra.*
In that case, it was held, that the legislature had the power
to impose a tax upon the inhabitants of a town to pay a
claim that had no legal validity, and that could in no way
be enforced against the town. In other words, that it was
within the power of the legislature to impose a tax upon
a locality for any purpose deemed proper, and that its power
in this respect is not restricted by the constitution of the
State. The other cases show that when the legislature deem
it proper to impose the burden upon any specified locality
they have the power of so doing. The act of 1859 must,
therefore, be held constitutional and valid. The act of 1860,
chapter 100, among other things, authorizes an assignment
of the assessments to the railroad company, in satisfaction
of the money to be paid for doing the work and making the
change in operating the road from steam to horse power.
To this I see no objection. It in no way affects or changes
the rights of the owners of the lands assessed. Whether the
money, when collected upon the assessments, is paid into
the city treasury and then paid to the company, or paid to
the company directly, is immaterial to them. Whether the
act of 1863, chapter 298, relating to this assessment, is con-
stitutional, depends upon the question whether the owners
of the lands upon which the assessments were made were
personally liable for the payment, or whether the lands only
were liable therefor. Section 7 of the act of 1859, among
other things, provides, that the collector shall levy and col-
lect the amount of the several assessments therein men-
tioned in the same manner as the county tax is levied and
collected; and the same measures taken to enforce the collec-

tion thereof, as are provided by law in regard to the county tax, and in addition the collector is clothed with the same powers as the collectors in the city of Brooklyn. This places the assessments in question upon the same footing as county taxes. That the latter, when assessed upon residents, in respect of real or personal property, creates a personal liability for payment, there can be no doubt. The statutes point out the mode of enforcing this liability in a way more efficacious than that provided by law for other liabilities. Taxes assessed upon non-resident real estate impose no personal liability upon the owner. In respect to these, the collector has no duty except to receive payment if offered, and if not, to make return to the proper officer. This being so, the legislature had the power to provide such remedy to enforce the liability, whether by action or otherwise, as it deemed proper. The rule is well settled, that the remedy to enforce rights is, at all times, within the control of the legislative power, with the exception that it cannot deprive a party of all efficient remedies to enforce rights based upon contract, as that would in effect impair or destroy the obligation of the contract, which is prohibited by the federal constitution. But new and additional remedies may be provided, as in the present case. It is unnecessary, in the present case, to determine whether section 4 of the act of 1862, authorizing the company to appoint a collector, is in conflict with section 2, article 10, of the Constitution; as the plaintiff, in bringing the action, is not exercising the functions of any officer, but is acting as a suitor only. The legislature, having power to authorize an action for the collection of the assessment, had also power to provide who should be plaintiff therein. This brings us to the only remaining question in the case; and that is whether there was any competent evidence authorizing a finding that a majority of the owners of land, within the territory made subject to assessment, made application to the common council, requesting them to make application to the Supreme Court for the appointment of three commissioners, as provided by the

1st section of the act of 1859. That section provides that the common council of the city of Brooklyn shall, upon petition or application of a majority of the owners of land, at the time of the passage of the act, in the district proposed to be assessed thereby, make application to the Supreme Court, at Special Term, etc. The act itself is wholly silent as to how this essential fact shall be proved. The act to consolidate the cities of Brooklyn, etc., referred to in this section, for the mode of proceeding in procuring the appointment of the commissioners, contains nothing applicable to the present case in this respect. The right of the common council to apply for the appointment of the commissioner, lies at the foundation of the whole proceeding. Unless this right existed, all the proceedings in appointing the commissioners, and subsequent thereto, are void. This right depends upon the question whether a majority of the land owners petitioned the common council to proceed under the act. In the absence of such petition, the common council had no authority in the premises, and nothing could be done under the act. The act does not provide for the determination of this fact by the common council, nor by the Special Term upon the presentation of the petition for the appointment of the commissioners. The plaintiff seeks to show that the defendant became liable to pay the assessment. It was incumbent upon him to show the existence of the facts creating the liability. The act being silent as to what should be deemed proof of the fact that a majority of the land owners petitioned the council, the plaintiff was bound to prove such fact by competent common law evidence. This could be done by proof, showing who were the owners of the land, at the time of the passage of the act, and that a majority of such persons petitioned the common council, as required by the first section of the act. Neither the application of the council to the court, nor the affidavit of the mayor, accompanying such application, was evidence of this fact against the defendant. (*Sharp* v. *Speir*, 4 Hill, 76, and cases cited.) There was no competent evidence of this fact

given upon the trial, and the exception to the finding of this fact by the judge was well taken. Upon this ground the judgment should be reversed, and a new trial ordered.

All the judges concurred for reversal, except HUNT, Ch. J., and MASON, J., who were for affirmance, and LOTT, J., who did not vote.

Judgment reversed, and new trial ordered.