IN THE MATTER OF THE PETITION OF CLARA M. PEUGNET TO VACATE AN ASSESSMENT.

*Designation of official papers in New York, under chap. 853, of 1868, and chap. 383, of 1870 — duty of clerks of boards of aldermen when none are designated — Chap. 580, of 1872 — effect of certificate of commissioners appointed under.*

In order to render the designation of a paper, appointed to publish the proceedings of the common council under chapter 853, Laws of 1868, operative and complete, it is necessary that its name and title should be communicated to the common council and to the clerk of each board thereof.

As no newspapers were ever designated under chapter 383, Laws of 1870, the prohibition therein contained against publishing notices in papers other than those to be designated thereunder, never became operative.

Where no newspapers have been designated to publish notices of the passage of resolutions authorizing improvements to be made, it is, under section 20, chapter 137, Laws of 1870, the duty of the clerks of the respective boards of the common council to make the publication in any newspaper that can be procured to make it.

Where the contract for repairing a street, to defray the expenses of which an assessment has been laid, has been certified to be without fraud, by the commissioners appointed under chapter 580, Laws of 1872, the assessment cannot be set aside for a failure to publish the resolution authorizing the improvement as required by law.

APPEAL by the Mayor, etc., of the city of New York, from an order vacating an assessment made upon two lots owned by the petitioner, for the expenses of repaving Fortieth street, between Third and Madison avenues.

*Wm. Barnes,* for the appellant.

*T. F. Neville,* for the respondent.

DANIELS, J. :

The assessment was set aside and vacated because notice of the resolution directing the work was not published for three days before its passage or adoption by either board of the common council. It was shown to have been introduced in the board of aldermen on the 9th day of January, and adopted by it on the 11th of March, 1871, and in the board of assistant aldermen on the 24th, and adopted on the 27th of April, 1871, and approved by the mayor on the following day. One daily and three weekly papers were designated by the mayor and comptroller, on the 1st of December, 1868, for the publication of the proceedings of the common council, and the resolution was shown not to have been published by the daily papers before its adoption by either board of the common council. But, inasmuch as it did not appear that the designation made had ever been communicated to the common council, or to the clerk of each or either board, as the act of 1868 required it should be, to render the designation operative and complete, the failure to publish notice of the resolution in either of those papers, did not make out the petitioner's case, or render the proceedings invalid. (Laws of 1868, vol. 2, p. 2008; *Matter of Anderson*, recently decided by the Court of Appeals.)

By section 1, of chapter 383, of the Laws of 1870, not more than seven daily and six weekly newspapers were to be designated by the mayor and comptroller for the publication of legislative, executive, and assessment proceedings. But it was shown that no designation whatever was made under this requirement, and consequently the publication could not have been made in compliance with that provision of the law. This act declared that it should not be lawful for any officer to pay, or allow to be paid, any money for advertising, except to such newspapers. (Laws of 1870, vol. 1, p. 882.) But that prohibition could only become operative by the designation being made of the newspapers mentioned in the act. The act could be complied with only by that being first made, so that the proceedings could be published in such papers. As it never was done, the duty created never became an active one.

But, by another act, the publication of the notice was rendered imperative, and it was required to be done through the agency of the clerks of the respective boards. (Laws of 1870, vol. 1,

p. 369, § 20.) And as they were not bound, for the reasons already stated, to publish in the newspapers designated in 1868, and none were selected under the act of 1870, they were necessarily left at liberty to make the publication through any newspapers that could be procured to make it, and that duty it was not shown they had failed to perform.

The last act cited required, before any vote should be taken in either board upon the resolution, that notice of it should be published at least three days; and it was alleged that this notice had not been given. But the fact that it was not published in either of the papers designated in 1868, in which there was no obligation to publish it, nor in the Transcript, which, for want of time after its own appointment, could not have published it before the time of its adoption, did not sustain that allegation. The notice was required to be published before either board voted upon the resolution, and that may very well have been done in even a weekly paper, between the time when the resolution was introduced into the board of aldermen, and the vote taken upon it, which was a period of over two months, or in any daily, while it was before the board of assistant aldermen, and before they voted upon it. After being adopted by either board, a different publication was required. That was to include the resolution itself with the yeas and nays, and the names of the persons voting for or against it; and it was to be made immediately after the adjournment of the board adopting it, and before it should be sent to the other board, or to the mayor for his approval. (Laws of 1870, 369, § 20.)

The clerks of the respective boards were required to have these publications made, and, by the evidence which was taken, they were not shown to have neglected the performance of the duty. It was shown that the Transcript was designated as the official paper, pursuant to section 1, of chapter 574, of the Laws of 1871, on the twenty-fifth day of April of that year. But no evidence was given of the want of any part of the requisite publication, which by possibility might have been made in that paper.

If the notice had not been published, or there had been any omission to publish the resolution with the yeas and nays, and the names of the persons voting for or against it, that was a fact susceptible of direct and satisfactory proof, which it was for the appli-

cant to make for the purpose of legally supporting the application; but that was not done. The case of Levy (11 S. C. [4 Hun], 501), was relied upon as sustaining the sufficiency of the proof given upon the hearing. But the decision since made in the case of Anderson (*supra*), by the Court of Appeals, has so far modified the conclusion adopted in that case, as to deprive it of its effect as a controlling authority in the present controversy.

But even if the notice was not published, the assessment made on the petitioner's property cannot legally be vacated. It was made for the expenses of a repavement, which, in ordinary cases, would be invalid for want of such publication. For the act of 1870 did prohibit the improvement from being made without the publication of the requisite notice for at least the period of three days. (Chapter 137, Laws of 1870, § 20.) But this case was relieved of the effect of that provision, by another proceeding which appeared to have been taken before the assessment was made.

The proofs produced upon the hearing of the petitioner's application, contained an admission that the contract, for the expenses of performing which the present assessment was made, had been certified by the commissioners named in chapter 580, of the Laws of 1872. And it has not been claimed that they failed, before they did that, to conform in any respect to the provisions of that act. Under the admission which was made, it is to be presumed that the commissioners heard the case as the statute required them to do it, and afterward certified that the contract was free from fraud. For, as they had no power to make any other certificate, if they made any at all in the case under the provisions contained in the act, that must have been the one they were admitted to have made. And that legalized the contract from that time, even though the notice of the resolution never had been published in any paper as the act of 1870 required it should be. The statute of 1872 (Laws of 1872, vol. 2, 1412, § 1) included contracts for repaving, and the certificate, when made by a majority of the commissioners, corrected the irregularity in making the contract, arising out of the omission to publish the resolution directing the improvement. For it was ratified and confirmed by the provisions of the act, as soon as the certificate was made. After that, it became the duty of the comptroller to issue assessment bonds to obtain the money to pay the expenses of the

improvement. And then he was to certify the expenses to the board of assessors, which was thereupon not only authorized, but required, in the manner provided by law, to assess such expenses upon the property benefited by the improvement. (Laws of 1872, 1414, 1415, §§ 4, 5.) The applicant's property must have been benefited by the work which was done under the contract, and under these provisions it was required to bear its proportionate part of the expenses. The assessment itself has not been complained of as irregularly laid by the proceedings taken for that purpose after the confirmation of the contract, and it must now be considered lawful and proper. For it could not have been the object of the law to provide for the imposition of an invalid assessment, by means of the provisions it contained, or for one which, when made according to its terms, the courts would be obliged to vacate for want of compliance with some other provision of law, relating to an antecedent portion of the proceedings. The design on the contrary was to provide, as it did in express terms, for an assessment through which so much of the expenses of the improvement as should be borne by the property, could be reimbursed to the city. And the provisions of the act, by necessary implication, rendered that valid, when imposed upon the basis of the commissioners' certificate that the contract for the work had been entered into, and the work itself performed, without fraud.

That this act was within the power of the legislature, is now settled too well to be questioned. (*Lennon* v. *Mayor*, 55 N. Y., 361; *Matter of Van Antwerp*, 56 id., 261; *Matter of Anderson*, (*supra*), *Litchfield* v. *Vernon*, 41 N. Y., 123.) And as its effect was to render the assessment a legal one which is the subject of the present controversy, the order appealed from should be reversed, with ten dollars costs besides disbursements, and an order entered directing a further hearing of the case.

DAVIS, P. J., and BRADY, J., concurred.

Ordered accordingly.