GAUTIER v. DITMAR et al.

(Supreme Court, Appellate Division, Second Department. May 19, 1911.)

1. TAXATION (§ 2*)—NATURE OF POWER.

Under a constitutional government, the right to levy taxes is an incident of sovereignty, and does not depend on any specific grant of power to the government; there being no limitation upon the Legislature, other than that the taxes be levied for public purposes, as prescribed by Const. art. 8, §§ 9, 10.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 2; Dec. Dig. § 2.*]

2. TAXATION (§ 615*)—POWER OF LEGISLATURE—DELEGATION.

Laws 1908, c. 490, providing that the city of New York may sell at public auction liens which it holds against lands for taxes and assessments, and that upon the owner's failure to pay the purchaser certain interest the whole of the lien shall become payable at the purchaser's option, and the land at this time as well as later may be sold, under the provisions of the Code of Civil Procedure relating to actions to foreclose mortgages for nonpayment of the lien, is constitutional; the Legislature having the power to delegate to private persons the right to sell land for failure to pay taxes.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 615.*]

3. CONSTITUTIONAL LAW (§ 70*)—POWER OF LEGISLATURE—JUDICIAL AUTHORITY AND DUTY.

The courts cannot pass on the wisdom of a legislative policy as expressed in statutes, but can only determine whether the Legislature had power to enact such statutes.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129–132; Dec. Dig. § 70.*]

Appeal from Special Term, Kings County.

Action by Louis F. Gautier against Anna P. Ditmar and others. From an order denying her motion for judgment on the pleadings, Anna P. Ditmar appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

William G. Cooke, for appellant.

Milton Frank and John B. Shanahan (James D. Bell, on the brief), for respondents.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CARR, J.   By chapter 490 of the Laws of 1908, which amended generally the Greater New York charter, a new scheme was provided for the collection of arrears of taxes and assessment on lands within the city of New York.   This scheme, stated briefly, provided that the city, through its appropriate officers. might sell at public auction, after a prescribed notice, any lien which it held against lands within the city for taxes or assessments unpaid and in arrears for three years from the date on which they were payable originally.   The lien to be so sold covered, in addition to the amount of the tax as originally levied, all accrued interest, together with the expenses of the sale.   It was provided that at the public sale the city's lien should be struck down to the bidder who, offering the amount of the city's claim, should at the time agree to charge "the lowest rate of interest, not exceeding 12 per centum per annum."   The statute provided for a formal transfer to the purchaser of the tax lien on complying with the regulations of the sale.   This formal transfer may be recorded in the appropriate office as if it were a mortgage on the lands affected. It was likewise provided that the amount of the lien so transferred should become due as to the purchaser and as against the property at a date three years after the date of the sale, and in the meantime the purchaser or holder of the lien should be entitled to receive interest thereon semiannually on the 1st days of January and July at the rate which the purchaser shall have bid at the public sale.   Provision was made for a redemption of the lands affected by the tax lien by any person having a legal or beneficial interest in the property affected.   It was likewise provided that, in default for 30 days of payment of interest on the lien, in default of the payment of taxes for 6 months after the delivery of the transfer of the tax lien, the holder thereof might elect to have the aggregate amount of the lien become due and payable at once against the land affected.   Provision was made for the maintenance in the Supreme Court by the holder of the tax lien of an action for the foreclosure thereof and a sale of the land affected, and the provisions of the Code of Civil Procedure regulating actions to foreclose mortgages were made applicable to an action to foreclose the tax lien.   In an action brought to foreclose the tax lien, the instrument of transfer of the tax lien was made presumptive evidence of the regularity and validity of the lien and its transfer, subject to such defense as to the irregularity or invalidity of the lien as was specifically pleaded in the answer, and the burden of proof of any irregularity or invalidity of the lien was put upon the person pleading or setting forth the same.   If judgment be awarded to the plaintiff, then the property affected is to be sold at public auction, with provisions as to a deed thereof and the distribution of the proceeds of sale as are common to actions for the foreclosure of mortgages.

On October 5, 1910, the plaintiff bought from the city of New York a tax lien on the property of the defendant in the sum of $118.94, on which interest was payable at the rate of 4⅞ per cent. per annum. The defendant neglected or refused to pay the plaintiff the interest which became due thereon on January 1, 1911.   Thereupon the plain-

tiff elected that the whole amount of the lien should become at once due and payable, and he brought this action to foreclose the lien, as in the statute provided. The complaint sets forth the facts claimed to constitute a cause of action for foreclosure in a short form provided by the statute in question. The defendant thereupon, without answering, moved at Special Term for judgment in her favor against the plaintiff on the complaint, on the ground that it did not state a cause of action. This motion having been denied, the defendant appealed to this court. On this appeal, as at Special Term, the defendant asserts that the statute in question, so far as it attempts to authorize a transfer by the city of New York to a private person of a tax lien on lands, with power to proceed to enforce the same, is unconstitutional and void. This, and this only, is the question involved in this appeal.

[1] The argument advanced by the appellant stated syllogistically, is as follows: The right and power to levy a tax against persons or on lands is purely governmental, as it is a part of the power of sovereignty. The power to sell lands for a failure to pay taxes is an inherent part of the right to lay taxes, and cannot be transferred to private persons, to be exercised for their own purposes. Therefore the statute in question is unconstitutional and void, in so far as it attempts to transfer to private persons rights and powers which are purely governmental and pertaining alone to the sovereign, or its governmental agencies. The major premise of this argument is correct unquestionably. The right to lay taxes, even under a constitutional government, exists as an incident of sovereignty, and not by virtue of any specific grant of power to the government under the form of a Constitution. The right may be regulated or restricted by express constitutional provisions; but it is not created by them, for it is the life blood itself of all government. People ex rel. Hatch v. Reardon, 184 N. Y. 431, 443, 77 N. E. 970, 8 L. R. A. (N. S.) 314, 112 Am. St. Rep. 628. The exercise of this power is practically unlimited by our Constitution; the only limitation being that taxes shall be levied for public purposes. Const. art. 8, §§ 9, 10. Nor is there any express or implied constitutional restriction on the power of the Legislature to choose such form of collection of taxes as it may deem expedient. As was said in Genet v. City of Brooklyn, 99 N. Y. 296, 306, 1 N. E. 777, 783:

"The power of taxation being legislative, all the incidents are within the control of the Legislature. The purposes for which a tax shall be levied, the extent of taxation, the apportionment of the tax, upon what property or class of persons the tax shall operate, whether the tax shall be general or limited to a particular locality, and, in the latter case, the fixing of a district of assessment, the method of collection, and whether the tax shall be a charge upon both person and property, or only on the land, are matters within the discretion of the Legislature, and in respect to which its determination is final."

[2] The statute now under attack has a precedent in that considered in Litchfield v. Vernon, 41 N. Y. 123. In that case an act had been passed by the Legislature in 1859 (Laws 1859, c. 484) authorizing the city of Brooklyn to contract with the Long Island Rail-

road for the closing of its tunnel on Atlantic avenue and the grading of the street and the laying of surface railroad tracks thereon, the work to be done by the railroad company for a sum not exceeding $125,000. Commissioners were to be appointed under the act, to make the contract and to make an assessment for the payment of the expenses upon the lands situated within a specified district of assessment. In 1860, by chapter 100 of the Laws of that year, the Legislature authorized an assignment of the assessments so laid, and all right to collect the same, to the railroad company in satisfaction of the money to be paid for carrying out the improvement. This later act provided for the appointment by the railroad company of a collector to receive for it the amounts of the various assessments. All rights under the assessment list were assigned to the railroad company and a collector appointed by it to receive the assessments for its benefit. In 1863 an act was passed (Laws 1863, c. 298) authorizing this collector to bring actions at law against the owners of the lands assessed and who were in arrears for the assessments for the recovery of the amounts of said assessments. The action in question was brought under this act of 1863. It was held that the Legislature had power to authorize the assignment of the right to collect the assessments, and likewise to authorize the collector of the railroad company to maintain actions at law to recover the amounts assessed. There is no apparent distinction between the principle applied in Litchfield v. Vernon, ut supra, and that which governs the case at bar.

It is contended, however, that a distinction does exist, in that the collector of the railroad company in the case last cited was required by the statute to take an oath of office, and that he thereby became pro hac a public officer, and, while acting as such collector, he was clothed for the time being with a public official capacity. The court in that case did not view him as a public officer, for, were he so considered, a question would arise under section 2 of article 10 of the Constitution as to the lawfulness of his appointment in the method prescribed by the statute. The court said (41 N. Y. 135):

"It is unnecessary, in the present case, to determine whether section 4 of the act of 1862, authorizing the company to appoint a collector, is in conflict with section 2, art. 10, of the Constitution, as the plaintiff, in bringing the action, is not exercising the functions of any officer, but is acting as a suitor only. The Legislature, having power to authorize an action for the collection of the assessment, had also power to provide who should be plaintiff therein."

The learned counsel for the appellant calls to our attention a number of authorities in cases decided in other states as supporting his attack upon the statute in the case at bar. Ventura County v. Clay, 112 Cal. 65, 70, 44 Pac. 488; Page v. Clagget, 71 N. H. 85, 51 Atl. 686; Griffing v. Pintard, 25 Miss. 173; McInerny v. Reed, 23 Iowa, 410. On examination, all of these authorities are found to relate to attempts to assign tax liens, or to assert subrogation to tax liens, without specific legislative authority, and all of them for that reason are inapplicable to the case at bar. There is considerable discussion in the briefs of the respective counsel as to the wisdom of the legislative

policy in enacting this legislation. To one it is an attempted return to the "tax farming" of ancient Rome, or to the days of the French "farmer generals" of the eighteenth century; while to the other it is a mild, but effective, method of collecting promptly for the city of New York the immense burden of tax arrearages under which at most times it staggers along. Except that it grants to the holder of the tax lien the same costs in the action of foreclosure as are granted in mortgage foreclosures, there seems to be no additional burden put upon the delinquent taxpayer, but rather does this act appear less rigorous than many statutes enacted within recent years to enable a reasonably prompt collection of tax charges.

[3] As to the question of legislative policy, the courts have no concern. As to the question of legislative power, there is a judicial duty of inquiry and determination. We are of opinion that the act in question is valid, and that the complaint herein states a good cause of action.

The order should be affirmed, with $10 costs and disbursements.