OPINION OF THE COURT
Anthony J. Cerrato, J.
In an action charging the defendant insurance companies and all other foreign fire insurance companies with failing to maintain adequate record-keeping procedures to insure the accurate allocation among the State’s fire districts of the so-called 2% fire insurance tax imposed under sections 553 and 554 of the Insurance Law, plaintiff, the Greenville Fire Company No. 1, which seeks, inter alia, declaratory and injunctive relief, has moved for a class action determination pursuant to CPLR 902, and the defendants have cross-moved to dismiss the complaint and for summary judgment in their favor.
SECTIONS 553 AND 554 OF THE INSURANCE LAW
Section 553 applies to all foreign and alien[1] insurance companies, except mutual fire insurance companies, and requires that there be "paid to the treasurer of the fire department of every city, village, fire district * * * by every foreign and alien fire insurance corporation * * * which insure property against loss or damage by fire [1.8% of the premiums collected on account of fire insurance sold within the State][2] for the use and benefit of such fire department”. (Footnote added.) Section 553 permits the subject insurance companies to "elect to pay the tax to the superintendent of insurance, which shall be distributed by him as prescribed in this section.”
Many of these foreign and alien insurance companies have elected not to pay the tax to the Superintendent of Insurance.
*404 Instead, they subscribe to a private agency, Insurance Services Offices, formerly of New York Fire Insurance Rating Organization, which distributes the funds to the fire departments after aggregating the amounts due from each of its subscribers. Under section 553 no report of the tax payments due or paid is required to be filed with the Insurance Department. However, when the insurance companies taxed under section 553 file for a tax credit they then supply figures as to the amounts paid.
Section 554 imposes a similar tax on foreign mutual fire insurance companies, except that such companies send the 1.8% for the local fire departments with a report as to allocation to the Superintendent of Insurance who "distributes” it presumably to the proper fire departments.
THE FACTS
Plaintiff is a volunteer fire company which was organized pursuant to section 176-b of the Town Law and provides fire protection for the residents of the Greenville Fire District in Westchester County. Much of the property within the district has a Scarsdale postal address. It had been noted that despite increasing property values in the area the amounts received by their local volunteer fire district from the afore-mentioned fire insurance tax declined. It was further noted that fire departments in areas surrounding Greenville with similarly named post offices were receiving disproportionately greater amounts from the fire insurance tax proceeds. There is an indication in the record that the foregoing facts were brought to the attention of the New York State Insurance Department and that plaintiff was informed that in all likelihood the Greenville Fire District was not being paid its proper share; that the problem of improper allocation of the fire tax proceeds was State-wide; and that there was nothing in the way of affirmative action that the department could do because it simply did not have either the staff or the budget.
As a result of the foregoing, steps were then taken by plaintiff to determine in fact whether or not its fire district was receiving the fire tax imposed on policies written within its fire district by the insurers subject to the tax. Accordingly, data was collected from about 20%[3] of the Greenville residents *405 as to the companies which insured their homes from destruction by fire. Thereafter, a check was made to see if their local fire district received the fire tax due it under sections 553 and 554 from the insurance companies subject to these taxes. The answer was a resounding "no”, and massive errors were revealed. More than half the foreign insurers, which had written policies in this State on property located in the Greenville Fire District, had not designated the Greenville Fire District as the proper recipient of the fire tax in any of the policies they had written. Errors among many of the other foreign insurers were almost as disturbing. It appeared that those fire districts that did not have a distinct and coterminous postal zone never received the proper allocation of the fire insurance tax. Some districts received more and some less than their proper allocation. The Greenville district was one which apparently was short-changed. A study made of the system used by the insurers to allocate the tax proceeds revealed that the defendant insurers invariably just asked their brokers, agents and insureds to list the correct fire department on the insurance application form and assumed the information provided was correct. In practice this meant listing the postal zone as the fire district. Since most of the residents of the Greenville Fire District have a Scarsdale postal address, the Scarsdale Fire District benefited to the detriment of that of Greenville.[4]
As indicated, the instant action has been commenced by plaintiff, Greenville Fire Company No. 1, which seeks a class action designation, to compel the defendant insurance companies and all other foreign and alien fire insurance companies authorized to do business within the State of New York, to comply with the requirements of sections 553 and 554 of the Insurance Law. .
VALIDITY OF THE TAX
At the outset it is well to note that the levies under sections 553 and 554 of the Insurance Law are perhaps not really taxes in the strict sense of that word but more the nature of conditions or fees imposed for the privilege of doing business in New York. (Trustees of Exempt Firemen’s Fund of
*406 City of N. Y. v Roome, 93 NY 313.) Whatever their characterization however, the constitutional validity of these so-called "taxes” has been upheld (Trustees of Exempt Firemen’s Fund v Roome, supra) and have been further determined not to be violative of the interstate commerce clause of the United States Constitution and within the scope of the exemption from the commerce clause of State insurance regulations authorized by Congress in the McCarran Act. (US Code, tit 15, § 1011; see Prudential Ins. Co. v Benjamin, 328 US 408; People v Condor of Amers., 43 Misc 2d 899, affd 23 AD2d 822.)
From a reading of the statutes in question, it seems clear that the initial responsibility for collecting and allocating the so-called fire tax among the proper fire departments,' the intended beneficiaries of the subject levies, is on the taxed insurers. Such a procedure, though rare, does not appear to be constitutionally defective as there is no express or implied constitutional restriction on the power of the Legislature to choose such form of collecting taxes as it may deem expedient (Gautier v Ditmar, 204 NY 20; see, also, Genet v City of Brooklyn, 99 NY 296), or to authorize the assignment of the right to collect tax assessments (Gautier v Ditmar, supra; see, also, Litchfield v Vernon, 41 NY 123) or how the tax collected is allocated and by whom it is allocated.
ON WHOM SHOULD REST THE DUTY TO ENFORCE THE ALLOCATIONS REQUIRED UNDER SECTIONS 553 AND 554 OF THE INSURANCE LAW
The Superintendent of Insurance (in the amicus curiae brief prepared by the Attorney-General) argues that it would burden his office with a virtually impossible task if he had to allocate to the approximately 2,500 fire districts the tax due froiri each subject insurer based on the millions of fire insurance policies issued on property in this State. It is pointed out that the superintendent does not even maintain records as to the number of fire insurance policies in force in this State, not to mention his failure to keep records concerning the location of each piece of insured property in this State, which company insures each property and the amount of premiums paid.
Whatever else can be said about the failure to keep the afore-mentioned records, it would have been unconscionable for the Legislature of this State to impose a "tax”, as here, which is to be paid directly to or for the benefit of a third party (not for general revenues), and yet not provide some sort *407 of check to see if the intended recipients of the "tax” were in fact receiving their proper share. The Legislature, however, did not act so irresponsibly and indeed did provide the Superintendent of Insurance with the power to see that its intent is carried out. Thus, section 10 of the Insurance Law specifically charges and vests with the Superintendent of Insurance "the rights, powers and duties as expressed or reasonably implied” in the Insurance Law. Moreover, section 559 of the Insurance Law vests with the Superintendent of Insurance, exclusive power to enforce article 17 of the Insurance Law and that article embraces the so-called fire "tax” imposed under sections 553 and 554.
Among the statutory directives in sections 553 and 554 that are within the purview of the Superintendent of Insurance to enforce is, for example, the requirement in section 553 that "[e]very agent for any * * * insurer [referred to in this section] shall report to the insurer the name of the city, village, fire district * * * in which the proper insured is situated”. (Emphasis supplied.) Presumably the Legislature meant that the correct city, village or fire district be named.[5] Section 554 empowers the superintendent to "appoint suitable and competent persons to collect and distribute the tax imposed by this Section in accordance with the terms thereof’. Section 554 goes on to require that after paying 10% of the fire insurance tax proceeds received by the superintendent for the "support and maintenance of the firemen’s home at Hudson, New York, and the balance thereof shall be paid [by the superintendent] to the respective treasurers or other fiscal officers of localities * * * in amounts which will be that proportion of the balance so [as] to be distributed which the total amount of fire insurance business written by foreign mutual fire insurance companies on property situated in the locality bears to the total amount of fire insurance business written by foreign mutual fire insurance companies on property situated in any and all of the protected localities in the *408 state”. (Emphasis supplied.) Clearly, where the statute, as here, requires a specific allocation to be made by the superintendent, he cannot rely implicitly on the insurers to make the proper allocation, but must take reasonable steps to insure himself that the proper allocation is being made.
Overall, it is evident from the statutory scheme that the obligations and duties of the subject insurance companies for reporting and paying the fire "tax” to the intended beneficiaries is owed to the Superintendent of Insurance (not the individual fire departments), and further that the responsibility for seeing that the proper allocation of the fire tax is made is vested, impliedly in section 553 and expressly in section 554, with the Superintendent of Insurance. To be sure,' the specifics as to how that responsibility is carried out is not spelled out in any detail in the subject statutes and must be left to the sound discretion of the superintendent. Thus, he may require the subject insurance companies make the proper allocation and thereafter supervise or audit their work. He may require the insurers to forward to his office all the pertinent data and upon verification of such data proceed to make the required allocation himself. How he does it is not for this court to decide in this action. It is enough to say that the superintendent is the proper person to entertain complaints from fire companies concerning improper allocations of the fire "tax” and is the proper party to take steps (seeking injunctive relief if necessary) against the insurance companies to see that each of the fire companies receives its proper allocation. If additional powers are needed to perform this duty then help should be sought from the Legislature. The complete disclaimer of responsibility by the Superintendent of Insurance, as expressed in the brief on his behalf, is incomprehensible.
In short, this court is of the view that if the Superintendent of Insurance does not see that the fire companies receive their proper allocation their remedy may very well be to seek mandamus relief against the superintendent.
CONCLUSION
It is the opinion of this court that the instant plaintiff does not, either individually or in a class action, have the capacity to bring this action unless: (1) the Superintendent of Insurance both refuses to investigate the complaints and take steps to remedy the situation in the event that the complaints are *409 well founded; and (2) the plaintiff has sought and has been denied mandamus relief sought against the Superintendent of Insurance to do his clear duty as heretofore noted. Only if both of the afore-mentioned conditions precedent have been satisfied will this court entertain a motion by plaintiff for class action determination.
Accordingly, the motion for a class action determination is denied, and defendants’ cross motions to dismiss the complaint are granted.

. Subdivision 18 of section 4 of the Insurance Law defines a "foreign insurer” as "any insurer incorporated or organized under the laws of any state * * * other than this state”. Subdivision 3 of this same section defines an "alien insurer” as "any insurer incorporated or organized under the laws of any foreign nation”.

. Sections 553 and 554 also require that "there shall also be paid to the treasurer of the Firemen’s Association of the State of New York * * * for the support and maintenance of the Firemen’s Home at Hudson, New York, the sum of twenty [$.20] cents upon * * * [each one] hundred [$100] dollars”. The total of these two percentages (1.8% and .2%) equals the 2% fire insurance tax previously referred to in this decision.

. An attempt was made to poll all of the residents of Greenville and the 20% represents the response received from the poll.

. As noted, not all fire departments in this State have a coterminous postal zone. Indeed, there are many more eligible fire departments than postal zones and thus any allocation of the fire insurance tax that is predicated upon a postal zone must per force result in the improper allocation of the tax in many instances.

. In Circular Letter No. 14 dated November 12, 1975 the then Superintendent of Insurance issued what can best be described as a directive to "all foreign and alien INSURANCE COMPANIES AUTHORIZED TO TRANSACT FIRE INSURANCE BUSINESS IN THE state of new York.” Therein, he spoke of the requirement that the insurance companies, subject to sections 553 and 554 of the Insurance Law, "must properly allocate its fire premiums to the cities, villages, fire districts or fire protection districts in which the insured property is located.” The foregoing is at least some indication that the superintendent back in 1975 felt some compulsion to see that the fire insurance tax was properly allocated in the manner the Legislature intended.