■ GREENVILLE FIRE COMPANY No. 1, for Itself and All Other Departments in the State of New York Similarly Situated, Appellant, v AETNA CASUALTY AND SURETY Co. et al., Respondents.—In an action, *inter alia,* to declare that foreign and alien fire insurance companies are required, pursuant to sections 553 and 554 of the Insurance Law, to properly allocate fire insurance premiums to the fire departments or districts in which the insured property is located, plaintiff appeals from (1) an order of the Supreme Court, Westchester County, dated January 9, 1978, which (a) denied plaintiff's motion, made pursuant to CPLR 902, for a class action determination and (b) granted defendants' cross motions to dismiss the complaint and (2) the judgment entered thereon on January 19, 1978. Judgment and order affirmed, without costs or disbursements. For the privilege of doing business in this State, alien and foreign insurance companies (i.e., those incorporated or organized under the laws of States other than New York, or in a foreign nation) must pay certain taxes or fees. One of those is the so-called fire department tax, which is levied upon premiums received for fire insurance written upon property situated in New York State. The fire department tax, originally enacted over 100 years ago, is a levy of a special and peculiar nature in that the amounts paid by the insurers do not pass into the State treasury as general revenues, but rather are payable to and for the benefit of the various fire departments of the State. The present statutory scheme is contained in sections 553 and 554 of the Insurance Law. Until 1957, section 553 required all foreign and alien stock fire insurance companies to pay directly to the treasurer of the fire department of every city, village, fire district or other organized territory afforded fire protection by any fire department the sum of $1.80 for each $100 of premiums received annually for fire insurance written upon property located within the confines of the particular fire department. That section also made it the duty of every agent to report to the insurer the name of the city, village, fire district or other organized fire territory in which the insured property was situated, and required the insurers to file with the fire department treasurer a verified report setting forth the aggregate amount of premiums upon which the tax was payable. Section 554 imposes a like requirement upon foreign mutual fire insurance companies, except that the mutuals pay the total tax due to the Superintendent of Insurance, along with a statement breaking down the amount of premiums collected by the city, town, village or fire district in which the insured property is located, and the Superintendent is then required to allocate and distribute the tax among the various fire departments entitled thereto. In 1957 section 553 was amended so as to permit foreign stock insurers to elect to pay their fire department tax to the Superintendent of Insurance, to be distributed by him to the various fire departments entitled thereto. Apparently, the task of allocating and making individual payments to the appro-

priate fire departments was burdensome and expensive. With the permission of the Superintendent, stock insurers who were members of the Insurance Services Office (ISO), formerly known as the New York Fire Insurance Rating Organization, were allowed to submit their fire tax to ISO, which then aggregated the allocated moneys and forwarded one check to each of the various districts on behalf of all member insurers. The amendment to section 553 was intended to give some relief to those insurers who were not members of ISO. It is alleged, and not seriously disputed, that over the years, with the proliferation of fire districts in this State, the allocation system has become riddled with massive errors. This action arises out of the alleged failure of defendant insurers to pay to the plaintiff fire department the correct amount of fire department tax due it. The problem is one of proper allocation among fire districts, not a failure to pay the total aggregate tax due under the Insurance Law. It would appear that some of the moneys allegedly due plaintiff have been paid to other fire departments because of a misdesignation or miscoding of the true fire district in which the insured property is located. Plaintiff seeks (1) a judgment declaring that the defendant insurers are required to properly allocate fire insurance premiums among the appropriate fire departments, (2) injunctive relief to compel defendants to adopt such procedures as will insure reasonable accuracy in the allocation and (3) an accounting covering the past six years. Plaintiff also seeks a class action determination. Special Term denied plaintiff's motion for a class action determination and dismissed the complaint on the ground that plaintiff had no standing to sue. The court held that the insurers' duty to report and pay the fire department tax to the intended beneficiaries was owed to the Superintendent of Insurance and not to the individual fire departments. The responsibility for seeing that the proper allocation is made was held to be vested in the Superintendent, who must endeavor to correct the situation by whatever available procedures or remedies are, in his discretion, deemed appropriate. Clearly, under the present statutory scheme, as well as in actual practice, the Superintendent plays no role in the actual allocation process under section 553, as respects ISO member stock insurers. His role under section 554, and as to non-ISO member insurers under section 553, is essentially ministerial. There is no support for the proposition that the Superintendent is required to independently determine the correct allocation of the fire tax proceeds for defendant insurers. The Insurance Department does not maintain independent records of every single fire insurance policy issued upon property situated in this State, and it is not required by law to maintain such records. Moreover, the Insurance Department is a "first instance" department, so that its expenses, except where otherwise specifically provided by statute, are taxed to the State's domestic insurance companies. Section 553 contains no provision whatever with regard to the department's expenses. Section 554 does make such provision, since the mutual insurers have always paid the tax directly to the Superintendent, but it is therein provided that the expense of collecting and distributing the tax must be deducted only from the tax proceeds themselves. The department, which appears here as amicus curiae, estimates that the annual cost of an independent allocation determination would be double the amount of the taxes received pursuant to section 554. Thus, even if that estimate is somewhat exaggerated, the result would be either that the administrative costs would exceed the tax revenues, leaving the fire departments with nothing, or that the State's domestic insurers would have to cover the cost of administering a tax levied only upon foreign and alien insurers. We do not believe that the Legislature ever intended

either result. We are not unaware of the administrative and financial burdens imposed upon, and long assumed by, defendant insurers in allocating the tax, but the statutory scheme clearly reflects the practical reality that it is the individual insurers which, through their agents, can best and most quickly identify the fire department in which the insured property is located. However, although we reject the notion that the blame for present misallocations of the fire department tax must be laid at the doorstep of the Superintendent of Insurance, or that the latter must independently duplicate the insurers' work product, we do agree that plaintiff cannot supplant the Superintendent in the specific enforcement of sections 553 and 554 of the Insurance Law and, more particularly, in compelling the defendant insurers to adopt such procedures as would insure reasonable accuracy in the statutory allocation. Unquestionably, the fire department tax is intended to benefit a particular class, of which plaintiff is a member. However, plaintiff's special interest therein does not suffice to give it standing to enforce a revenue-producing statute, especially one pertaining to the closely regulated area of insurance. The Superintendent of Insurance has exclusive standing to restrain violations of the Insurance Law (see Insurance Law, § 35) and ample powers to compel the defendant insurers and their agents to properly carry out *their* statutory responsibilities. Martuscello, J. P., Shapiro, Cohalan and Margett, JJ., concur. [92 Misc 2d 402.]