LOUIS F. GAUTIER, Respondent, *v.* ANNA P. DITMAR, Appellant, and THE CITY OF NEW YORK, Respondent, Impleaded with Others.

Constitutional law — taxation — the power of taxation is vested in the legislature and, except as restrained by the Federal Constitution, its exercise, for public purposes, is unlimited — New York (city of) — provisions of charter providing for sale of tax liens are constitutional and valid.

1. The people of the state, by adopting the Federal Constitution, acquiesced in the grants of and restrictions upon their rights it created or may create; but such legislative powers as they did not yield are delivered over to the legislature, except as withheld by the State Constitution.

2. The power of taxation is inherent in the people. It is vested in the legislature, as a part of the more general power of making laws, and, except as restrained by the Federal Constitution, its exercise for public purposes is unlimited.

3. While it would be incompetent for the legislature to leave to a state officer or department the power to determine whether a tax should be levied, or at what rate, or upon what property, it may lawfully delegate to a ministerial officer or any department, or its appointee or other authority, the power of using the machinery, as and in the method created by it, for the collection of the taxes it has levied.

4. The application of the procedure or remedy through which the tax is collected is no part of the power of taxation within the meaning of the principle that "Taxation is the most delicate and highest attribute of sovereignty and cannot be delegated."

5. So much of the Greater New York charter as is contained in sections 1027 to 1045, as amended by chapter 490 of the Laws of 1908, so far as the same provides for the sale of tax liens by the city and the foreclosure thereof by the purchaser, is a valid act of the legislature.

*Gautier* v. *Ditmar*, 144 App. Div. 721, affirmed.

(Argued November 20, 1911; decided January 9, 1912.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered May 19, 1911, which affirmed an

order of Special Term denying a motion for judgment on the pleadings.

The complaint alleges: On October 5, 1910, the collector of assessments and arrears in the department of finance of the city of New York held, under chapter 17, title 5, of the charter of that city, a public auction of transfer of tax liens for unpaid taxes, water rents and assessments for local improvements affecting lands and tenements in the borough of Brooklyn, and thereat the city of New York sold and transferred to the plaintiff, who bid the lowest rate of interest thereon, viz., 4⅞ per cent per annum, "the right of The City of New York to receive taxes, assessments and water rents, which became a lien upon the premises" described in the complaint, prior to the 2d day of October, 1909, and the lien thereof, including the penalties and interest, and charges of notice and advertisements of said sale, and all other costs and charges accrued thereon, together with the interest bid, in consideration of the advancing by the plaintiff of the said taxes, assessments, water rents and penalties, the interest thereon to the time of such sale, all other charges for notice and advertisement of such sale, and all other costs and charges accrued thereon. The aggregate amount of the transfer of tax lien so transferred by the city to the plaintiff was $118.94. A transfer of the tax lien was duly made to plaintiff as such purchaser and by him duly recorded. The appellant omitted to pay the interest on said transfer of tax lien on the 1st day of January, 1911, or within thirty days thereafter, as required by the provisions of chapter 17, title 5, of the charter, and there is justly due plaintiff upon said transfer of tax lien the sum of $118.94, together with interest from October 6, 1910, at the rate of 4⅞ per centum per annum. The complaint asks that the transfer of tax lien be adjudged a valid and binding lien against the premises; that the rights of the defendants and all persons claiming under them be foreclosed,

except the claim of the city of New York for taxes, assessments and water rents, which became a lien on or after the 2d day of October, 1909, and that the premises be decreed to be sold according to law. The appellant demurred to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. The issue of law was duly tried as a contested motion (Code Civ. Pro. § 976) and judgment on the pleadings was denied. The Appellate Division affirmed this decision.

The following questions were certified to this court: " *First,* whether so much of the Greater New York charter as is contained in sections 1027 to 1045 as amended by chapter 490 of the Laws of 1908, so far as the same provide for the sale of tax liens by the city and the foreclosure thereof by the purchaser, is a valid act of the Legislature ? *Second,* whether the complaint in this action states facts sufficient to constitute a cause of action ? "

*William G. Cooke* for appellant. The right to impose taxes, with the power to collect them, is an essential and inalienable prerogative of sovereignty, of which government cannot by any means whatsoever divest itself. (*Guest* v. *City of Brooklyn,* 99 N. Y. 307; *McCulloch* v. *Maryland,* 4 Wheat. 328; *People* v. *Draper,* 15 N. Y. 544; *People* v. *Alberson,* 55 N. Y. 55; *People* v. *Howland,* 155 N. Y. 280; *Barto* v. *Himrod,* 8 N. Y. 483; *People* v. *Squire,* 107 N. Y. 606; *People* v. *Bd. of Suprs.,* 4 Barb. 71; *Burch* v. *Newbury,* 10 N. Y. 391; *People* v. *Coler,* 173 N. Y. 115.) The delegation, attempted by the act in question, of the right to collect taxes was beyond the legislative power. (*Hubbell* v. *Weldon,* Lalor's Supp. 145; *Williams* v. *Peyton,* 4 Wheat. 79; *Sharp* v. *Spier,* 4 Hill, 81; *Stevens* v. *N. Y. & O. Co.,* 13 Blatchf. 104; *Thompson* v. *Allen Co.,* 13 Fed. Rep. 97; *Venture Co.* v. *Clay,* 112 Cal. 70; *Page* v. *Claggett,* 71 N. H. 85; *Griffing* v. *Pintard,* 25 Miss. 173; *MacInery* v. *Reed,* 23 Iowa, 410.) The act is void because of the provision which it

contains for fixing the penalty to be imposed upon the delinquent taxpayer. (*People* v. *Ronner*, 185 N. Y. 291; *People* v. *Menching*, 189 N. Y. 8.)

*Milton Frank* for plaintiff, respondent. The act is constitutional. (*People ex rel. McDonald* v. *Keeler*, 99. N. Y. 463.) The legislature has inherent power to prescribe the method of collection of taxes. (*Pritchard* v. *Madden*, 24 Randolph [Kan.], 491; *City of Rochester* v. *F. W. Assn.*, 183 N. Y. 31; *Litchfield* v. *Vernon*, 41 N. Y. 127; *Sharp* v. *Spier*, 4 Hill, 81; *Leigh* v. *Green*, 90 N. W. Rep. 255.)

*Archibald R. Watson, Corporation Counsel* (*James D. Bell* and *John B. Shanahan* of counsel), for defendant, respondent. The charter provisions authorizing the sale by the city of New York of its right to receive taxes and the transfer thereof and for the foreclosure of the lien are constitutional, and appellant's contention to the contrary is based upon a misconception. (*Genet* v. *City of Brooklyu*, 99 N. Y. 306; *People ex rel. Hatch* v. *Reardon*, 184 N. Y. 443; *People ex rel. Ferguson* v. *Reardon*, 124 App. Div. 823; *People ex rel. Atkins* v. *City of Buffalo*, 63 App. Div. 569; *Meriwether* v. *Garrett*, 102 U. S. 472; *Pritchard* v. *Madren*, 24 Kan. 487; *Cowles* v. *Brittain*, 9 N. C. 199; *Baltimore City* v. *State*, 105 Md. 4; *State* v. *Thorne*, 112 Wis. 81; *Hagar* v. *Supervisors*, 47 Cal. 222; *Woodrough* v. *Douglass County*, 98 N. W. Rep. 1092.) The charter provisions covering the transfer of tax liens do not permit the purchaser to impose any penalty upon the delinquent taxpayer, nor is what is called a penalty, arbitrary, dependent upon caprice, or unequal. (*People ex rel. Eisman* v. *Ronner*, 185 N. Y. 285.)

COLLIN, J. In 1909 and 1910, title 5 of chapter 17 of the charter of the city of New York provided: All unpaid taxes and assessments for local improvements and water rents shall be a lien upon the real estate on which they

are laid. (Section 1017.) Whenever any real estate tax or assessment for local improvements remains unpaid through three years from its confirmation, so as to be due and payable, and any water rent through four years from its maturity, the collector of assessments and arrears, under the direction of the comptroller, may advertise said tax liens for sale, by an advertisement, published as prescribed, requiring the owners to pay to the collector such tax, with unpaid penalties and seven per cent interest, and giving notice that in case of default therein the tax lien will be sold at public auction at a specified place and time "for the lowest rate of interest, not exceeding twelve per centum per annum, at which any person or persons shall offer to take the same in consideration of advancing the said tax, assessment and water rents and penalties as the case may be," interest, costs and charges; in case of non-payment by the owner or owners the collector may, under the direction of the comptroller, cause such tax lien to be sold at public auction, as expressed in the advertisement. The right of the city to receive taxes, assessments and water rents, and the lien thereof so sold shall be called "tax lien" and the instrument by which it is assigned shall be called "transfer of tax lien." (Section 1027.) The amount of the tax lien sold shall be paid to the comptroller within thirty days from the sale and a transfer of tax lien delivered to the purchaser. Lacking a bid the collector may purchase it for the city. (Section 1029.) The transfer shall operate to transfer and assign the tax lien, penalties, interest, and charges and costs, and create a lien upon the property affected thereby for the interest to which the purchaser may be entitled under his bid. (Section 1030.) The aggregate amount of the tax lien transferred shall be due three years from the date of the sale, but may be paid and discharged within that period by any person having a legal or beneficial interest in the property affected, after notice as provided. Until it is fully paid its holder shall be entitled to receive

interest thereon, at the rate bid, from the day of sale semi-annually on the first days of January and July, and to declare it due and payable upon a default in the payment of interest for thirty days or a default for six months in the payment of any taxes, assessments or water rents, which became a lien on and after the date of the tax lien (Section 1032); and may maintain an action in the Supreme Court to foréclose the tax lien. (Section 1035.) The plaintiff in such action, unless the defendants obtain judgment, shall be entitled to a judgment establishing the validity of the tax lien, so far as it is not adjudged invalid, and its transfer and directing the sale of the real property affected thereby, or such part thereof as shall be sufficient to discharge the tax lien, or such items thereof as shall not be adjudged invalid, and the interest and all other accrued taxes, assessments and water rents affecting the property together with the expenses of the sale and the costs of the action. (Section 1038.)

The learned counsel for the appellant strenuously contends that the statutory provisions, in form, delegate to the purchasers of the tax liens the power of taxation and for that reason are void. His fundamental premise is that taxation is an inalienable prerogative of sovereignty and includes the collection by the state of the sums imposed by it. Under the pleadings and the briefs and arguments of counsel, the appeal presents the sole question, do the enactments authorizing the sale of the tax liens transcend the powers of the legislature. The entire legislative power of the people of the state is vested in the legislature, except as withheld by the Constitution of the state or restricted by the Federal Constitution. The original Constitution of 1777 was framed by and for an organized, orderly and self-governing society and was in large measure the adaptation of established civil rules and institutions to the new conditions wrought by the complete dissolution of the allegiance of the colonies to the British crown. It assumed the existence and per-

petuation of the fundamental and acknowledged rules and principles preservative of civic order and co-operation and prerequisite to its operation and which in so far as they are not expressed must be read into it, because obedience to them is essential to its utility and purpose. An act of the legislature inimical to them is as unconstitutional as the act which contravenes an express provision of it. Whenever the language of the Constitution is not explicit or admits of doubt it is presumed that it inhibits the violation of acknowledged principles of justice and liberty. (*People ex rel. Devery* v. *Coler,* 173 N. Y. 103, 115; *Loan Association* v. *Topeka,* 20 Wall. 655, 662.) The people of the state, by adopting the Federal Constitution, acquiesced in the grants of and restrictions upon their rights it created or may create; but such legislative powers as they did not yield are delivered over to the legislature, except as withheld by the State Constitution. (*Bank of Chenango* v. *Brown,* 26 N. Y. 467, 469.) The proper inquiry, therefore, is, does the statute violate a constitutional protection to the property of the appellant?

The power of taxation is inherent in the people, because the sustenance of the government requires contributions from them. It is vested in the legislature as a part of the more general power of making laws, and, except as restrained by the Federal Constitution, its exercise for public purposes is unlimited. (*People ex rel. Griffin* v. *Mayor, etc., of Brooklyn,* 4 N. Y. 419.) It consists of two distinct processes — the one relating to the levying or imposition of the taxes on persons or property; the other the collection of the taxes levied. The first is constituted of the provisions of law which determine or work out the determination of the persons or property to be taxed, the sum or sums to be thus raised, the rate thereof and the time and manner of levying and receiving and collecting the taxes. It definitely and conclusively establishes the sum to be paid by each person taxed, or to be borne by each

property specifically assessed and creates a fixed and certain demand in favor of the state or a subordinate governmental agency, and a definite and positive obligation on the part of those taxed, and prescribes the manner of its voluntary or enforced fulfillment. It is a legislative function and is vested in the absolute legitimate discretion of the legislature. It cannot be delegated, except as the legislature may confer upon the municipalities or political divisions, which are through the local authorities representatives of the people and participants in the government of the state, powers of providing revenue for local governmental and public purposes. In the case at bar the legality of the levying of the tax is unquestioned. Unquestioned, also, is the fact that the legislature prescribed the time for the payment and the maturity of the tax and the method for the voluntary payment of it and the process by which it shall be collected if not paid. The legislature recognized the established principle that the authority under which the tax is collected and the method of its collection lie in the discretion of and must be prescribed by the legislature; and therefrom arises the grievance of the appellant. She contends that the statutory authority of the city to sell the right to receive taxes and the lien thereof, and of the purchasers to foreclose the lien are void, because they delegate to the purchasers an essential part of the power of taxation. In this she errs.

The sale assumes a valid tax and lien. It is no part of the process which produces them. They constitute an exact demand and a security therefor in favor of the city, the relation of which to the person or property obligated by them is determinate. While it is true that a tax is not a debt of the person charged or a judgment against him, it is a contribution or demand in a sum fixed by law, enforceable in a prescribed method and of a salable and transferable nature. The sale and transfer of the right to receive it and of its lien do not, in and of themselves, affect their character or their relation to the taxpayer or

his property. By them the amount of the tax is not increased or its effect upon the person or property or the procedure for its collection changed. The rights and powers of the purchaser do not rest in his discretion, but are created and defined by the legislature. We are unable to perceive in the effects of the statutory provision authorizing the sale and transfer of the right to receive the taxes and the liens the semblance of an infraction of the protection of persons or property afforded by the Constitutions. Nor can we perceive such infraction in the provision authorizing the plaintiff or a purchaser to invoke and apply the remedy of foreclosing the lien for the purpose of collecting the tax. There is no need of citing authorities in support of the obvious proposition that the prescript of the remedy of foreclosure of the lien of delinquent taxes is within the discretion of the legislature. While it would be incompetent for the legislature to leave to a state officer or department the power to determine whether a tax should be levied, or at what rate, or upon what property, it may lawfully delegate to a ministerial officer or any department, or its appointee or other authority, the power of using the machinery, as and in the method created by it, for the collection of the taxes it has levied. By whom, when and through what procedure or remedy, taxes shall be collected is a matter for legislative determination, subject to the rule that the procedure cannot be utterly unreasonable or arbitrary or unequal and unjust in its operation. It is not within the power of the legislature to create different remedies against taxpayers for demands of one character. That would not afford equal protection of the laws or regard the constitutional safeguards of property. If the city had, in the absence of another bid, bid in the tax lien, it would have had "the same rights in, to and under such transfer of tax lien" as the plaintiff has, except the right to have interest or damages at the rate of twelve per cent; and its right to have then foreclosed the

lien under the default of appellant is not discussible.  The foreclosure by the plaintiff, rather than the city, does not impose an additional or increased burden or hazard upon the appellant or her property.  Whether the city or the plaintiff or other person enforces under legislative authorization the remedy through which the payment of the tax shall be enforced is beyond her questioning.  The legislative regulation under which the respondent Gautier is the plaintiff in the foreclosure action does not disturb her legal or constitutional rights.  The application of the procedure or remedy through which the tax is collected is no part of the power of taxation within the meaning of the principle that "taxation is the most delicate and highest attribute of sovereignty and cannot be delegated."  These conclusions have support in the authorities.  (*Litchfield* v. *Vernon,* 41 N. Y. 123; *Genet* v. *City of Brooklyn,* 99 N. Y. 296; *Title Guarantee & Trust Co.* v. *Haven,* 196 N. Y. 487; *Hart* v. *Tiernan,* 59 Conn. 521; *Leigh* v. *Green,* 62 Neb. 344; 64 Neb. 533; 193 U. S. 79; *Logan County* v. *Carnahan,* 66 Neb. 685, 703; *Matter of Commissioners of Elizabeth,* 47 N. J. L. 488, 499; *Flock* v. *Smith,* 65 N. J. L. 224; *Hill* v. *Georgia State Building & Loan Association,* 120 Ga. 472; *League* v. *Texas,* 184 U. S. 156.)

Appellant contends further that the provision for the competitive bidding as to the rate of interest at which the tax liens shall be purchased makes the act void, because the rates of interest fixed by the successful bids are penalties capriciously and unequally imposed by the bidders. The statute denominates the sums to be paid by those charged with the taxes to the purchasers, interest, and such is its nature.  Penalties in taxation are, generally speaking, additions of some definite per centum to the taxes as inducements to pay and as punishments for failure to pay, within a designated period.  The rates of interest at which the tax liens are purchased fix the compensation or interest of the purchasers for advancing to the city the delinquent taxes and securing the landowners

the extension of the times of payment. The legislature lawfully fixed the maximum rate of interest at twelve per cent. The provision that purchasers may make their advances at lower rates to be fixed by the bidding applies to all delinquent taxes, is uniform and impartial, and there is no principle which makes it illegal. (*People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8; *People ex rel. Eisman* v. *Ronner*, 185 N. Y. 285.)

The wisdom or unwisdom of the statute is a matter for the legislature and not for the courts, which cannot legitimately question the policy or condemn the effects of any law consistent with the organic law of the state and nation.

Each of the questions certified should be answered in the affirmative and the order appealed from affirmed, with costs.

CULLEN, Ch. J., HAIGHT, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Order affirmed.