## Commonwealth v. Bates

*C. A. Garratt,* for Commonwealth; *A. G. Rutherford,* for defendant.

SWOYER, P. J., November 14, 1932.—This is an appeal on the part of Herbert Leroy Bates under section 616 of The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751, from the action of the Department of Revenue of the Commonwealth of Pennsylvania in suspending his license to operate an automobile.

Counsel have filed an agreement as to facts as follows:

"1. That the defendant, Herbert Leroy Bates, was involved in an accident on February 29, 1932, while operating his motor vehicle and as a result of said accident Raymond Stanton died.

"2. That Herbert Leroy Bates, as a result of said accident, was charged with involuntary manslaughter, indicted and tried before a jury at the March Term, 1932, and was found not guilty on March 26, 1932. Said proceedings are fully set forth in No. 41, January Sessions, 1932.

"3. That a hearing was had before a representative of the Department of Revenue, on May 10, 1932, relative to the said Herbert Leroy Bates being involved in said accident, and at said hearing all of the record of No. 41, January Sessions, 1932, including the verdict of not guilty, was introduced.

"4. That on August 3, 1932, the secretary of revenue made an order suspending the operator's license of Herbert Leroy Bates for a period of six months.

"5. That on August 4, 1932, the defendant appealed said decision and order to this court.                    "C. A. GARRATT,
                                        "Attorney for Commonwealth.
                              "A. G. RUTHERFORD,
                                        "Attorney for Defendant."

Upon this statement of facts, the matter came up for hearing before the court on September 26, 1932, at which time no testimony was taken or evidence offered by either side, it being verbally agreed upon between counsel that the appeal should stand or fall upon the constitutionality of section 615 (b) 4 of The Vehicle Code of 1929 as amended by the Act of June 22, 1931, P. L. 751, which constitutionality or unconstitutionality the court is asked to determine.

The pertinent portions of the act of assembly in question are as follows:

"615 (b). The secretary may suspend the operator's license or learner's permit of any person, after a hearing before the secretary or his representative, or upon failure of the said person to appear at such hearing, whenever the secretary finds upon sufficient evidence: . . .

"4. That such person was operating any motor vehicle involved in an accident resulting fatally to any person."

It is contended by the appellant that this section is in violation of article two, section one, of the Constitution of Pennsylvania—"The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives;" and of the Fourteenth Amendment to the Constitution of the United States—"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Taking up first the question raised under article two, section one, of the Constitution of Pennsylvania, we find "legislative power" defined as follows: "Authority exercised by that department of government which is charged with the enactment of laws as distinguished from the executive and judicial functions. The law-making power of a sovereign state." "The authority conferred by or exercised under the constitution of a state or of the United States, to make new laws or to alter or repeal existing ones:" 2 Bouvier Law Dictionary, 1914.

We cannot see that the enactment of The Vehicle Code was other than an exercise of the power granted to the legislature by the Constitution; while the act might have created in the secretary of revenue or his representative certain judicial or quasi-judicial powers which are objectionable or in themselves unconstitutional, we cannot find that the enactment of the act itself was in violation of the Constitution, the power to enact such legislation having been expressly and exclusively given to the legislature.

"Legislation is essentially an act of sovereign power. . . . The very definition of law . . . shows the intrinsic superiority of the legislature. It may be said, the power of the legislature, also, is limited by prescribed rules. It is so. But it is, nevertheless, the power of the people, and sovereign as far as it extends:" Gibson, J., in Eakin et al. *v.* Raub et al., 12 S. & R. 330, 351.

"Plenary power in the legislature for all purposes of civil government is the rule. A prohibition to exercise a particular power is an exception:" People ex rel. Wood *v.* Draper et al., 15 N. Y. 532, 543.

This power is limited, however, by the State Constitution and by the Constitution of the United States.

"The legislative power of a State extends to everything within the sphere of such power, except as it is restricted by the Federal Constitution or that of the State:" Township of Pine Grove *v.* Talcott, 19 Wall. 666, 676.

"The Legislature of a state does not look to the state Constitution for power to act on a particular subject, but only to determine whether the sovereign legislative will has been in any manner restricted or limited by that instrument:" syllabus in Platt *v.* Le Cocq et al., 150 Fed. 391; McCreary *v.* Fields, 148 Ky. 730.

"The state legislature possesses all legislative power, except such as has been delegated to congress and prohibited by the Constitution of the United States . . . and such as are expressly or impliedly withheld by the state constitution. . . . The only limitations, therefore, upon the power . . . are those imposed

by the state constitution, the Federal constitution and the treaties and acts of congress adopted and enacted under it:" Townsend *v*. State, 147 Ind. 624; Motlow *v*. State, 125 Tenn. 547; Gautier *v*. Ditmar et al., 204 N. Y. 20; Moss *v*. Tazewell County, 112 Va. 878.

The test, therefore, is, does this act of assembly conflict with the Constitution of the United States, which prohibits any state from enacting legislation which shall deprive any person of liberty or property without due process of law or deny to any person within its jurisdiction the equal protection of the laws? To answer this question we must ascertain (1) Does the section complained of deprive any person of liberty or property? (2) If so, does it do so without due process of law? and (3) Does it deny to any person the equal protection of the laws?

Under the act of assembly, the secretary of revenue is empowered to suspend the operating privilege of any person who has been involved in an automobile accident which results fatally—his power is limited to this, and he has no right or authority to impose other or further penalty than the suspension of the license. It is well-settled law that a license to operate an automobile is not property, but a mere permit, which the power which grants has also the power to revoke. On this point we quote at length from the opinion of Judge Rathbun in La Plante *v*. State Board of Public Roads, 47 R. I. 258, 131 Atl. 641; we fail to find a Pennsylvania case exactly in point:

"La Plante contends that the suspension of his license . . . deprived him of his property without due process of law or the law of the land, and the question arises whether the license to operate a motor vehicle on the public highways is property within the constitutional inhibition. Counsel cites no authority in support of his contention that such a license is property. The terms of the license provided that it should remain in force for the period of one year, 'unless previously suspended or revoked for cause.'

"The operation of motor vehicles upon the public highways of the State is a subject clearly within the police power. The legislature in the exercise of such power has provided for the licensing of competent persons to operate motor vehicles and has declared that no person 'shall operate a motor vehicle upon the highways of this state, until he shall have first obtained a license for that purpose.' . . . It is evident that a license to operate a motor vehicle is a permit to do that which would otherwise be unlawful. Although the privilege may be valuable, it is not property in any legal or constitutional sense. 'A license to operate an automobile is merely a privilege:' Huddy on Automobiles, 7th ed., page 81. Babbitt, Law Applied to Motor Vehicles, 3rd ed., Sec. 233, contains the following statement: 'A license being "neither a contract nor a right of property within the legal and constitutional meaning of those terms," is no more than "a temporary permit to do that which would otherwise be unlawful . . . hence, the authority which granted a license always retains the power to revoke it, either for due cause of forfeiture or upon a change of policy and legislation" in regard to the subject. And such revocation cannot be pronounced unconstitutional either as an impairment of contract obligations or as unlawfully divesting persons of their property rights.' In Burgess *v*. Board of Aldermen, 235 Mass. at 100, Rugg, C. J., in upholding the revocation, without a hearing, of a license to operate a jitney bus, said: 'A license such as those here in question is a mere privilege or permission and in no sense a contract or property.' See, also, Child *v*. Bemus, supra [17 R. I. 230]; People *v*. Department of Health, 189 N. Y. 187; 37 C. J. 168; 17 R. C. L. 554. The license not being property, the suspension does not deprive the licensee of his property without due process of law or otherwise."

We feel constrained to adopt the opinion of the learned court as above set forth in so far as it relates to the status of a license as neither property nor contract.

While a license may not be property in itself, what of the money which the licensee pays to the Department of Revenue for the license and the liberties and privileges therein granted—for we may take judicial notice of the fact that such payment is required? Money is most certainly property, there is no provision in the act that the fee or any unearned portion thereof be returned to the licensee in the event of the suspension of his license, and, therefore, there can be no question but that the licensee is deprived of his money (property) in the event of suspension, which might well occur the day after the license was issued.

Further, we must consider the question whether or not the licensee is deprived of his liberty without due process of law. Liberty is not necessarily freedom from restraint or confinement—it may also include the right to exercise privileges common to one's fellow men. Bouvier says (Law Dictionary, Vol. 2, page 1965) : Liberty is a "privilege held by grant or prescription, by which some men enjoy greater privileges than ordinary subjects," and "*Civil liberty* is the greatest amount of absolute liberty which can in the nature of things be equally possessed by every citizen in a state." Blackstone says: "The term is frequently used to denote the amount of absolute liberty which is actually enjoyed by the various citizens under the government and laws of the state as administered:" 1 Blackstone Com. 125. We also find that liberty, or liberties, is interchangeably defined with right. "The term is also used in the expression, rights, liberties, and franchises as a word of the same general class and meaning with those words and privileges. This use of the term is said to have been strictly conformable with its sense as used in Magna Charta and in English declarations of rights, statutes, grants, etc.:" Bouvier Law Dictionary, citing Com. *v.* Alger, 7 Cush. (Mass.) 53, 70. From these definitions it would appear that a licensee is deprived of his liberty, in the broader meaning of the term, by the suspension of his license.

But is such deprivation of property or liberty by suspension of license under the act a deprivation without due process of law? If it were a prerequisite to the suspension of a license that the licensee be guilty of some offense against the law of the land, then we could answer this question in the negative. But according to the provisions of the act a license may be suspended by the secretary of revenue if the licensee was operating any motor vehicle involved in an accident resulting fatally to any person. We hold that, in order that there may be due process of law, the offender must be guilty of some offense which brings him within the jurisdiction of such process; that a corpus delicti, as it were, must be necessary to prove a crime. Mere participation in a fatal accident may not involve any crime or even any offense; as our learned brother Judge Gardner says in Commonwealth *v.* Harry J. Schmitt, 81 Pitts. L. J. 53:

"There are many fatal accidents in collisions between motor vehicles where the driver of one car is in no way to blame. There are also many fatal accidents where a motor vehicle is involved which are entirely unavoidable; as when there is a sudden skid through no fault of the driver. There are many fatal accidents to a pedestrian, as when he suddenly steps out in front of a motor vehicle and is struck, without any fault of the driver."

A recklessly-driven car might collide with that of a person driving peacefully and lawfully upon the highway and as a result of such collision some occupant of the latter car be fatally injured—yet, under the act, the innocent driver of the latter car, perhaps already suffering bodily injury and damage to his

car through no fault of his own, would still be subject to suspension of his operating privilege because he was driving a car involved in a fatal accident.

There remains for disposition the further contention of the appellant that the act in question deprives him of the equal protection of the laws, in that no definite, prescribed course of action is fixed upon the secretary of revenue other than that he may, if he or his agent find that the licensee operated any motor vehicle involved in any accident which resulted fatally to any person, suspend the license of such licensee. Making the necessary substitutions required by the different acts involved, we know of no better discussion than that of our learned brother Judge Shull in Com. v. Madison, 16 D. & C. 824, 826:

"The real offense of this section is that it delegates power to a game protector [Secretary of Revenue] which, if exercised at all, should have been exercised in definite form by the legislature, for, as we have said, a government is presumably a government of laws and not a government of men. The very idea that one man may be compelled to hold his liberty or any material right either essential or incidental to the enjoyment of life and liberty at the mere will or caprice of another is intolerable in any country where freedom prevails, for indeed it is of the very essence of slavery itself, and section 706 [Paragraph 4, Article (b), Section 615 of The Vehicle Code of 1931, P. L. 751] of this act vests in the game protector [Secretary of Revenue] discretion without prescribing a uniform rule of action. It gives to him an arbitrary and uncontrolled power without reference to all of the class to which this statute was intended to apply and without being controlled or guided by any definite rule or specified condition to which all similarly situate may knowingly conform. Even though a law seem fair upon its face and impartial in its principles, yet, if it be open to administration by an individual with an evil eye and an unequal hand so as to make illegal discrimination between persons in similar circumstances, material to their rights, the denial of equal justice is still within constitutional prohibition: Yick Wo v. Hopkins, 118 U. S. 356."

True, such legislation and practice is common in our jurisprudence. The district attorney is not required to indict all persons who are in any way involved in a criminal offense; the several judges have great latitude in the imposition and suspension of sentences according to the circumstances of the case, and some forms of licenses are revocable without hearing or even at the pleasure of an individual. Such was the case in the matter of liquor licenses, when such licenses were legal, and is still the case in the matter of dance hall permits under the Act of May 11, 1927, P. L. 968, which permits (while issued by the county treasurer) may be revoked by the district attorney without a hearing.

Nevertheless, we regret the growing trend of such legislation and regard it as pernicious, first, because it creates a number of often legally unlearned and sometimes biased tribunals before which a person may be haled, and, secondly, because it places power restrictive, if not of life, at least of liberty and the pursuit of happiness, in the hands of too many otherwise unauthorized individuals. The act in question delegates the judicial power to the secretary of revenue or his representative, which in the present instance resulted in the anomaly of a person being found not guilty before a jury in the court of quarter sessions and later being penalized by a one-man court under the Department of Revenue. To this extent, at least, the "court" held by the inspector is superior in jurisdiction to the quarter sessions.

We are cognizant of the principle that where an act of assembly is merely unwise, the remedy lies with the legislature and not with the courts, and, further, that where several interpretations may be read into an act of assembly,

that most favorable to its constitutionality must be adopted. Giving these principles their broadest and most favorable application, we do not believe that they can affect the instant case, since we regard the particular clause of the act in question not only as unwise but as unconstitutional, nor can we read into it any meaning—without a hazardous guess as to the intent of the legislature—which will bring it within the Constitution.

True, there are decisions by courts in Massachusetts and Rhode Island, cited by the appellee and previously referred to in this opinion, that the issuing power (of a license) also has the power of revocation, and that the exercise of such power is not reviewable as a constitutional question; the textwriters have much to say to the same effect. But we do not find in either case or text that such license may be revoked or suspended without cause—in fact, "just cause" is uniformly cited as a requisite to such suspension or revocation. Since the section complained of does not provide such a requirement, the cited cases do not apply.

Therefore, for the reasons hereinbefore set forth, we are of the opinion that section 615 (b) 4 of The Vehicle Code of 1929, as amended by the Act of June 22, 1931, P. L. 751, offends against the Fourteenth Amendment of the Constitution of the United States, in that it deprives certain persons of the equal protection of the laws and may deprive them of liberty without due process of law, and is, therefore, unconstitutional and void.

And now, November 14, 1932, the action of the Secretary of Revenue of the Commonwealth of Pennsylvania in suspending the operating privilege of the appellant, Herbert Leroy Bates, is reversed and the operating privilege of the appellant is reinstated.