OPINION OF THE COURT
Edwin Kassoff, J.
This is a motion brought by respondents to dismiss the petition insofar as it alleges inequality of assessment. Petitioner has refused to amend its petition to comply with the requirements of subdivision 3 of section 307 of the Real Property Tax Law on the ground that the statute violates provisions of both the State and Federal Constitutions.
Section 307 of the Real Property Tax Law, "Standards of assessment in certain assessing units”, is quoted below:
"1. Every assessing unit which by local law, ordinance, resolution or executive order provides for the physical revaluation of all of the real property within its boundaries, or where a county provides for such a physical revaluation on behalf of such assessing unit, and is implementing such local law, ordinance, resolution or executive order with all deliberate speed, shall not be required to comply with the standard of assessment set forth in section three hundred six of this chapter through December thirty-first, nineteen hundred eighty.
"2. Real property in each assessing unit where section three hundred six of this chapter does not apply by virtue of the provisions of subdivision one of this section shall be assessed at not more than the full value thereof.
"3. Where the respondent in a tax review proceeding which is based in whole or in part on a claim of inequality is an assessing unit whose standard of assessment is set forth in *643 subdivision two of this section, the petition required by section seven hundred six of this chapter shall allege, in addition to the contents otherwise required by such section, that the assessment has been made at a higher proportionate valuation than the assessment of other taxable real property of the same major type, as determined by the state board of equalization and assessment pursuant to section twelve hundred of this chapter, and evidence to such effect may be introduced together with such evidence otherwise admissible under subdivision three of section seven hundred twenty of this chapter.
"4. In any proceeding to review an assessment commenced prior to the effective date of this section and pending on such date, the petitioner may amend his petition for the purpose of conforming such petition to the provisions of this section.
"5. The provisions of this section shall apply to all pending proceedings or proceedings hereafter commenced.”
Section 307 of the Real Property Tax Law applies to assessing units which are proceeding with "all deliberate speed” to reassess all real property within their boundaries. Subdivision 1 of the statute eliminates until December 31, 1980 the requirement that these units comply with the full-value standard of assessment established by section 306 of the Real Property Tax Law. Subdivision 2 of the statute provides that real property in these assessing units shall be assessed at not more than full value. Subdivision 3 of section 307, made applicable to all pending inequality proceedings by subdivisions 4 and 5, requires a petitioner to prove that his assessment has been made at a higher proportionate valuation than the assessment of other real property of the same major type as determined by the State Board of Equalization and Assessment (hereinafter referred to as "SBEA”).
The SBEA is an agency whose original responsibility was to establish State equalization rates, which were used by the State to apportion tax burdens and financial assistance (see Matter of Slewett & Farber v Board of Assessors of County of Nassau, 97 Misc 2d 637). A State equalization rate is a measurement of the relationship of total taxable assessed value to total taxable full value in an assessing unit (see Matter of Slewett & Farber v Board of Assessors of County of Nassau, supra). Section 1200 of the Real Property Tax Law additionally requires the SBEA to sample the ratio of assessment to market value for each major type of taxable real property, and it is these class ratios which section 307 of the *644 Real Property Tax Law makes relevant in a tax review proceeding.
Section 307 was enacted to give local assessing units relief from the flood of litigation that arose in response to relatively recent legislative and judicial activity in the real property tax area. The Legislature amended subdivision 3 of section 720 of the Real Property Tax Law (L 1969, ch 302) and greatly simplified the process of proving an inequality case. A petitioner would be allowed to rely solely on the State equalization rates, although proof by the selected parcel method or by the current sales method would still be permissible. In Guth Realty v Gingold (34 NY2d 440), the Court of Appeals gave judicial recognition to a petitioner’s right to rely solely on the State equalization rate in an inequality case. The courts further facilitated the proof of an inequality case in 860 Executive Towers v Board of Assessors of County of Nassau (53 AD2d 463, affd sub nom. Pierre Pellaton Apts. v Board of Assessors of County of Nassau, 43 NY2d 769), by holding that local assessing units would be permitted to challenge the appropriateness of the State equalization rate, but not the methodology of the SBEA. In Matter of Hellerstein v Assessor of Town of Islip (37 NY2d 1), the custom of assessing at a fraction of full value was declared to be contrary to law. The import of Hellerstein is that all real property in the State must be reassessed at full value in compliance with section 306 of the Real Property Tax Law. Section 307 was enacted to shield localities from the full consequences of the foregoing legislative and judicial activity for past years and for the period necessary to complete the current reform of the real property tax system (see Matter of Slewett & Farber v Board of Assessors of County of Nassau, supra).
The constitutionality of section 307 must first be tested against the principle that the power to tax is a legislative power which cannot be delegated to an administrative agency (Gautier v Ditmar, 204 NY 20; Matter of Mollenhauer, 257 App Div 286). Section 1 of article III of the New York State Constitution provides that "[t]he legislative power of this state shall be vested in the senate and assembly.” "The power to lay a tax, to determine the proportion thereof to be exacted from specified individuals or groups, to determine its incidence, is exclusively a legislative function” (Matter of Mollenhauer, supra, p 288). In Gautier v Ditmar (supra, p 28), the Court of Appeals stated that "it would be incompetent for the *645 legislature to leave to a state officer or department the power to determine whether a tax should be levied, or at what rate, or upon what property”.
In Matter of Levine v Whalen (39 NY2d 510, 515), the Court of Appeals drew a distinction between the power to legislate, which cannot be delegated to an administrative agency, and discretion in the administration of the law, which can be constitutionally delegated when accompanied by properly defined standards:
"Because of the constitutional provision that '[t]he legislative power of this State shall be vested in the Senate and the Assembly’ (NY Const, art III, § 1), the Legislature cannot pass on its law-making functions to other bodies (Matter of Mooney v Cohen, 272 N Y 33, 37), but there is no constitutional prohibition against the delegation of power, with reasonable safeguards and standards, to an agency or commission to administer the law as enacted by the Legislature (Packer Coll. Inst, v University of State of N. Y., 298 N Y 184, 190; Matter of Barone [Waterfront Comm. of N. Y. Harbor], 18 Misc 2d 1066, 1069, affd 8 AD2d 783, affd 7 NY2d 913). The delegation of power to make the law, which necessarily involves a discretion as to what it shall be, cannot be done, but there is no valid objection to the conferring of authority or discretion as to a law’s execution, to be exercised under and in pursuance of it.
"The Legislature may constitutionally confer discretion upon an administrative agency only if it limits the field in which that discretion is to operate and provides standards to govern its exercise.”
By the enactment of section 307, the Legislature has in violation of the State Constitution delegated to administrative officials the power to determine how great a tax burden is placed on a particular piece of property. The real property tax will now be largely determined by the classification of prop-, erty adopted by the SBEA. However, that agency is given absolutely no standards or guidelines to limit its discretion in classifying property. Under subdivision 3 of section 307, real property is classified according to the "major types” established pursuant to section 1200 of the Real Property Tax Law. This latter statute is also devoid of any standards, since it merely provides: "At least once in every five years the state board shall, as part of its procedure for establishing state equalization rates pursuant to this article, sample the ratio of *646 assessments to market values for each major type of taxable real property as of the same date or period of time in all cities, towns and villages. Upon completion of each state-wide study, the results thereof shall be filed in the office of the state board as a public record.”
Respondents’ argument that the classes already exist lacks merit. The SBEA has in the past changed its classifications of properties, and it may do so again in the future (Matter of Slewett & Farber v Board of Assessors of County of Nassau, 97 Misc 2d 637, supra). "At present, the SBEA has segregated all real property into nine classes (Property Type Classification Codes, NY State Div. of Equalization and Assessment, May, 1977). In the past, the State board had as many as 17 classes (see 860 Executive Towers v Board of Assessors of County of Nassau, 43 AD2d 910, supra), and occasionally listed certain types, such as apartments, as a separate category in some years but not in others. The difficulty of cataloguing property into classes is apparent, and the Legislature has not undertaken to define the classes.” (Matter of Slewett & Farber v Board of Assessors of County of Nassau, supra, p 646.) There is no legislative restriction on the ability of the SBEA to reclassify property tomorrow, if that agency, in its sole discretion, determines the necessity of such action. In view of the foregoing, the court finds that subdivision 3 of section 307 results in an impermissible delegation of legislative power (see Matter of Slewett & Farber v Board of Assessors of County of Nassau, supra).
Subdivision 3 of section 307 is also an unconstitutional delegation of legislative power because it in effect gives the assessors unlimited discretion to select the rate at which property will be assessed. The assessors are allowed unfettered discretion to assess each class of property at a ratio which may vary from zero to 100% of its full fair market value. Moreover, the statute does not provide the assessors with any guidelines for assessing one class of property higher than another, nor does the statute establish the proper difference among class ratios. The assessors may in a completely arbitrary manner decide to assess commercial property at a higher rate than industrial property. The local assessors in one community may decide to tax a class of property at the highest rate while the local assessors in the adjoining community may decide to tax the same class of property at the lowest rate. The only apparent check upon the power of the *647 local assessor is the class ratio found by the SBEA (section 307 contemplates that the assessment of a particular piece of property will conform to the class ratio). But the class ratio is itself derived from the aggregate of arbitrary assessments made by the local assessors.
The Legislature has thus given the assessor the unlimited power to determine what proportionate share of the tax will be raised from different groups, and this is an impermissible delegation of the legislative power (see Gautier v Ditmar, 204 NY 20, supra; Matter of Mollenhauer, 257 App Div 286, supra; Matter of Slewett & Farber v Board of Assessors of County of Nassau, supra). In Weissinger v Boswell (330 F Supp 615), a three-Judge Federal panel stated that it would be an unconstitutional delegation of legislative authority for the Alabama Legislature to allow the Department of Revenue to fix the ratio of assessment of taxable property in the State at between zero to 30% of fair market value. The court stated (p 625): "Delegating to an administrative agency the power to fix the ratio of assessment, without formulating a definite and intelligible standard to guide the agency in making its determination, constitutes an unconstitutional delegation of legislative power.” The unconstitutional delegation of legislative power is even more glaring in the case at bar, because in their unlimited discretion, the assessors may fix the ratio of assessment for a class of property at anywhere from zero to 100%.
The Legislature has itself called into question the validity of whatever purported standards underlie subdivision 3 of section 307. Chapter 126 of the Laws of 1979, as amended by chapter 127 of the Laws of 1979, changed subdivision 3 of section 720 of the Real Property Tax Law, the statute which controls the admissibility of evidence in a tax inequality proceeding. Except in cases of individually owned residential property, those recent enactments now make it impermissible to use the State equalization rate established for the roll containing the assessment under review as evidence on the issue of whether an assessment is unequal. The legislative findings expressed in chapter 126 of the Laws of 1979 are quoted below:
"Section 1. The legislature hereby finds and determines, after carefully evaluating the impact of the provisions of subdivision three of section seven hundred twenty of the real property tax law in relation to permitting the use of the state equalization rate established for the roll in proceedings to *648 review real property assessments, that such provisions are not capable of valid application to assessments of business and commerical properties as well as residential properties in the particular assessing unit. Moreover, in many instances the use of such equalization rate has not proven to be valid even in connection with the same types of property, and has often resulted in undesirable and unintended results.
"The legislature further finds that the reason such equalization rate is inappropriate and invalid is that the equalization rate established for the role [sic] was never intended to determine property values for taxing purposes, but was intended only to be used in connection with equalizing state aid and to compute constitutional tax and debt limits. Therefore, the use of such equalization rate for the purpose of quantifying the ratio of assessment to market value within a taxing district produces spurious and counter-productive results.” (Emphasis added.)
In view of the Legislature’s own finding that "the use of such equalization rate has not proven to be valid even in connection with the same types of property”, respondents’ argument that section 307 contains valid standards has no force.
The court notes the apparent inconsistency of the Legislature in making proof of the State equalization rate inadmissible but leaving proof of the class ratio admissible and mandatory pursuant to section 307. Apparently, section 307 was not repealed despite the above-quoted findings, because it increases the difficulty of proving an inequality case and thus shields local assessing units from the full consequences of Matter of Hellerstein v Assessor of Town of Islip (37 NY2d 1, supra).
The lack of valid standards in classifying real property for tax purposes results in a denial of due process under both the State and Federal Constitutions. In the field of taxation, due process of law is the authorized procedure whereby the property of the individual can be taken by the State, and this includes the initial authority to levy the taxes (Chicago Union Traction Co. v State Bd. of Equalization, 114 F 557, affd sub nom. Raymond v Chicago Traction Co., 207 US 20; Weissinger v Boswell, 330 F Supp 615, supra). A citizen is deprived of due process of law where, as in the case at bar, there is a substantial departure from the law as to the authority for a tax (Chicago Traction Co. v State Bd. of Equalization, supra; Weissinger v Boswell, supra). Under section 1 of article III of *649 the New York State Constitution, the Legislature, not administrative officials, has the power to tax, and yet, as has been shown above, it is administrative officials who, in effect, will be exercising that power under section 307. Moreover, due process necessitates that a tax statute have a reasonable degree of certainty and definiteness (Weissinger v Boswell, supra). The statute must be definite enough to enable a taxpayer to understand his obligations by reading it (Weissinger v Boswell, supra). Section 307 offends due process because a taxpayer will not know what his tax burden is until the assessors, in their unlimited discretion, fix a rate of assessment.
Section 307 also violates the equal protection clauses of the State and Federal Constitutions. Those clauses require that a classification of property for tax purposes have a rational basis (Matter of Association of Bar of City of N. Y. v Lewisohn, 34 NY2d 143). Here, the Legislature has permitted the unequal assessment of different classes of property, not because of any rational cause, but simply because unequal assessment has been practiced in the past. The statute, in effect, permits any rate of assessment on property, no matter how irrational, as long as the local assessing unit can show that other property of the same type has been assessed at the same rate. Although the State has wide discretion in classifying property for tax purposes when done reasonably (Lehnhausen v Lake Shore Auto Parts Co., 410 US 356), section 307 permits one class of property to be assessed at a higher rate than another on what may be purely arbitrary decisions of the assessors, and the statute does not reveal any rationale upon which all the various differences among the nine class ratios may be supported.
In conclusion, the court acknowledges that the wisdom of shielding local assessing units from the impact of Matter of Hellerstein v Assessor of Town of Islip (supra) is a matter for the Legislature. However, when the Legislature acted to ease the impact of that decision, petitioner had constitutionally protected rights to be free of taxation by administrative officials, to have due process of law, and to have equal protection of the law. These constitutionally protected rights should have, and, with more care, could have, been observed.
Accordingly, the motion to dismiss the petition is denied.