OPINION OF THE COURT
Chief Judge Kaye.
Under a statute creating the Greater Poughkeepsie Library District (L 1987, ch 524), the City of Poughkeepsie and the Town of Poughkeepsie must levy a tax to fund the Library District in an amount fixed by the trustees of the Library District. The Town of Poughkeepsie contends that the statute violates the State Constitution because it delegates the power to tax in violation of articles III, IX and XVI; fails to contain a Home Rule message as required by article IX, § 2 (b) (2); and fails to require equalized values among the two assessing units that make up the Library District (see, art XVI, §2). Both Supreme Court and the Appellate Division held the statute *577 constitutional. We disagree, concluding that the statute improperly delegates the power to tax.
The Statute
Established by special act as a joint endeavor of the Town of Poughkeepsie and the City of Poughkeepsie, the Library District has all the powers and duties of public libraries set forth in the Education Law, and additionally has authority to fix the amount of tax revenue to be raised and appropriated by the Town to fund the library. The Library District is governed by a board of 11 trustees, 7 appointed by the Town Supervisor, 4 by the City Mayor. The trustees set the budget, as well as the sources for funding the budget, which include appropriations from the City and Town (L 1987, ch 524, § 3).
A complicated formula determines the amounts to be appropriated from the City and Town. The trustees begin by dividing their budget into two portions — an amount to be funded by real property taxes in the City and Town, and an amount to be funded by other sources. Initially, the amount that the trustees determine should be funded by City and Town taxes is divided between the City and Town in proportion to the assessed valuation of property in the Library District. If 75% of the District’s assessed valuation is within the Town, for example, the Town will be responsible for 75% of the library budget allocated to the City and Town, with the City responsible for 25%. This is the "apportionment formula.”
Once the City’s allocated amount exceeds $300,000, for that year and thereafter the City and Town are responsible for appropriating the amount of the budget allocated by the trustees according to the apportionment formula (L 1987, ch 524, §§ 3-4). Thus, continuing the example, the Town would have to appropriate 75% of the amount allocated and the City 25%. In this event, however, the library budget is subject to approval by the City and Town legislative bodies, and if either fails to approve, the preceding year’s budget is used. To date, the City’s allocated amount has not exceeded $300,000.
If the City’s allocated amount is $300,000 or less — which has thus far been the case — the apportionment formula is not used to determine the appropriation. Instead, a formula hypothesizing contributions of 60% from the Town and City and 40% from other sources is used. Under that formula, the City is responsible for appropriating $300,000 and the Town 60% of the over-all library budget minus $300,000. If the amounts *578 obtained from other sources exceed 40% of the over-all budget, the amount the Town must actually contribute is correspondingly reduced. No approvals are required and neither the Town nor City can contest the amount to be appropriated (L 1987, ch 524, § 3).
The Controversy
In 1991 the library trustees set the budget at $1,448,570, determining that $612,570 would be raised from other sources and $836,000 would be obtained from the City and Town. With the Town having 71.23% of the total assessed value in the Library District, under the apportionment formula the Town would have been responsible for $595,482.80 ($836,000 X .7123) and the City $240,517.20 ($836,000 X .2877). Since the amount allocable to the City was less than $300,000, however, the apportionment formula was inapplicable. Instead, the City was responsible for $300,000 and the Town for a maximum of $569,142 — obtained by subtracting $300,000 from $869,142 (60% of $1,448,570). Since the trustees needed a total of $836,000 from the Town and City and the City was responsible for the set amount of $300,000, the Town was ultimately responsible for $536,000.
The Town refused to pay that amount, claiming it could raise only $423,309. However, the statute provides no authority for the Town to review — let alone reduce — its designated contribution. The Library District brought this action to compel the Town to pay the difference, and the City intervened. As an affirmative defense, the Town challenged the statutory method of determining its required appropriation, contending it is unconstitutional.
Analysis
Analysis of this statutory scheme requires two steps. First, we must determine whether the statute delegates taxing power to the Library District, or merely delegates the administration of a tax fixed by the Legislature. Delegation of purely administrative functions is constitutionally permissible (Matter of Levine v Whalen, 39 NY2d 510, 515). If, however, the power to tax has been delegated to the Library District, we must then decide whether such delegation falls within constitutional limitations.
*579 I.
Under the statutory scheme as it has operated to date, the Library District sets the library budget with no input from the Town or the City. Under that budget, the City is responsible for a fixed sum — $300,000. Thus, the Legislature has set the amount and rate for the City. However, the amount that must be raised by the Town fluctuates with the total budget, the amount to be obtained from other sources, and the relative assessed values of property within the District. The Library District controls two of those variables: it alone sets the budget, and it alone estimates the amount of funds available from other sources. Therefore, although a complicated formula determines the actual amount the Town must raise, the simple fact is that the library trustees control the end result and thus effectively set the tax rate for the Town.
Respondents urge that the Library District is not exercising taxing powers because the amount the Town will have to pay —and therefore the Town’s effective tax rate — is capped by the statutory formula. It is argued that the Library District may constitutionally be given the discretion to set the tax rate so long as it remains below the cap (see, Gautier v Ditmar, 204 NY 20, 30 [where Legislature fixed maximum interest on tax liens at 12% purchasers’ acceptance of lower rates of interest is permissible]).
This argument does not withstand analysis. First, Gautier addressed the interest rate on unpaid taxes, not the tax rate itself. Second, unlike Gautier, here there is no fixed cap on the tax rate. Instead, the "cap” varies depending on figures set by the Library District. By controlling its estimated expenses and alternative sources, the Library District can effectively fix the Town’s tax rate. Thus, there is a delegation of taxing power to the Library District.
II.
The power to tax, of course, lies solely with the Legislature (NY Const, art III, § 1; art XVI, § 1; Sonmax, Inc. v City of New York, 43 NY2d 253, 257; Matter of United States Steel Corp. v Gerosa, 7 NY2d 454, 459). This power is inherent in our form of government and justified by legislative accountability to the electorate. "The People have conferred upon their legislative body an unlimited power of taxation * * * and if legislators abuse their power in enacting some new plan of taxation, or act unwisely in imposing some new form of tax, it *580 is to the People that they are answerable” (People ex rel. Eisman v Ronner, 185 NY 285, 291-292). "In imposing a tax the legislature acts upon its constituents. This is in general a sufficient security against erroneous and oppressive taxation.” (McCulloch v Maryland, 4 Wheat [17 US] 316, 428.)
The taxing power may be delegated to legislative bodies of municipalities and quasi-municipal corporations (Foss v City of Rochester, 65 NY2d 247, 253; Matter of United States Steel Corp. v Gerosa, 7 NY2d 454, 459, supra; Gautier v Ditmar, 204 NY, at 27; see also, 16 McQuillin, Municipal Corporations § 44.07, at 26 [3d ed]). Such delegation preserves legislative accountability since "the municipalities or political divisions * * * are through the local authorities representatives of the people and participants in the government of the state” (Gautier v Ditmar, 204 NY, at 27). To prevent local usurpation of the taxing power, such delegation must specify the types of taxes which may be imposed and provide for some type of administrative or judicial review (NY Const, art XVI, § 1; 1938 Const Convention, 2 Revised Record, at 747; vol 3, at 2439-2440).
The power to tax may not, however, be delegated to administrative agencies or other governmental departments (Gautier v Ditmar, 204 NY, at 27-28; Matter of Brooklyn Children’s Aid Socy. v Prendergast, 166 App Div 852, 861, affd 215 NY 705). "[I]t would be incompetent for the legislature to leave to a state officer or department the power to determine whether a tax should be levied, or at what rate, or upon what property” (Gautier v Ditmar, 204 NY, at 28).
Two types of municipal subdivisions exercise the kind of governmental powers warranting delegation of the power to tax: municipal corporations and district corporations. A "municipal corporation” is a county, city, town, village or school district (General Construction Law § 66 [2]). A "district corporation” is any other territorial division of the State which possesses the power to contract indebtedness and levy taxes or benefit assessments upon real estate or to require the levy of such taxes or assessments (General Construction Law § 66 [3]). Fire districts and certain conservation districts may be granted the powers of a district corporation (NY Const, art VIII, § 3).
While municipal corporations generally provide comprehensive local government services, school districts — created for the purpose of education — have long been viewed as indepen *581 dent units on a par with general municipal corporations (see, Union Free School Dist. No. 3 v Town of Rye, 280 NY 469, 476; Kenwell v Lee, 261 NY 113, 117). Fire districts are also distinct government units which exercise their powers independent of the towns they serve (see, Harland Enters, v Commander Oil Corp., 108 Misc 2d 511, 513; Bauman v Town of Irondequoit, 204 Misc 494, 501; 4 Opns St Comp, 1948, at 209, 210). They operate as autonomous political entities, electing their own governing bodies and administrative officers (Town Law §§ 174, 175), and have independent expenditure limitations (Town Law § 176). Because fire districts are independent government units, towns must levy the taxes specified by a fire district without change (Town Law § 105).
Prior to 1938, other special purpose corporations operated as units of government independent from the counties, cities, towns or villages where they were formed (3 Revised Record, op. cit, at 2506-2510; see also, Gaynor v Marohn, 268 NY 417; Sixth Report of NY St Commn for Revision of Tax Laws, 1935 NY Legis Doc No. 63, at 118-121). The increasing proliferation of special districts, all operating as independent units of government, however, grew problematic, and in 1938 it was decided that "the further development of overlapping, independent taxing units of government should be halted. Not only do such special taxing units seriously complicate the governmental structure of the State, and especially the fiscal aspect thereof, but they diminish both the direct administrative and financial responsibility of the normal units of government of the State.” (Report of Comms on State Finances and Revenues, Cities, Counties and Towns, and Villages, Doc No. 6, at 3, reprinted in 2 Revised Record, op. cit., at 1077.) Article VIII, § 3 was added to the State Constitution, limiting the creation of municipal and district corporations to counties, cities, villages, towns, school districts, fire districts and certain conservation districts (NY Const, art VIII, § 3). These governmental subdivisions operate as independent units to which the taxing power may be delegated.
Article VIII, § 3 did not end the creation of other special districts, but merely changed their character, bringing them closer to administrative departments (see, 3 Revised Record, op. cit., at 2509-2510). Special districts are still widely used for creating and funding local services, but are subject to control by the municipal corporations they serve (see, e.g., Town Law arts 12, 12-A [providing for the formation of a variety of special districts]; see also, NY Dept of State, Local Govern *582 ment Handbook, at 114 [3d ed] [listing town improvement districts]).
The general statutes do not provide for the creation of library districts — libraries are generally created and funded by municipal corporations under the Education Law (Education Law §§255, 256). In recent decades, however, several special library districts have been created, either to limit support of a library to one part of a town or school district (see, e.g., L 1975, ch 593), or to expand support to more than one municipality (see, e.g., L 1992, ch 456). There are currently 26 such districts, including the one at issue. None of the special library districts — except for the one before us — has been delegated the power to tax.
As the Library District recognizes, special library districts are most like public improvement districts. Their function is to provide a mechanism for creating and funding library systems similar to those authorized under the Education Law. Special library districts cannot be created as full-blown independent governmental units; like public improvement districts, they are properly viewed as administrative departments. Respondent City’s argument that the taxing powers given to the Library District are constitutional because they are no different from those given to fire districts is thus without merit.
Our conclusion is supported by the policy that underlies the taxation power: broad discretion granted to the Legislature, moderated by accountability to the electorate (Gautier v Ditmar, 204 NY, at 27; People ex rel. Eisman v Ronner, 185 NY, at 292). Our system of government reflects this policy.
The governing bodies of independent units — counties, cities, towns, villages, school districts and fire districts — are generally elective (NY Const, art IX, § 1; Local Government Handbook, op. cit., at 145-146). Thus, delegation to these officials preserves accountability in taxation matters. In addition, even where the local governing body may be appointed (see, e.g., Town Law § 189-e [voters may choose whether board of joint fire district is elected or appointed]), the budget process — and thus the taxing power — is subject to legislative and voter oversight (see, e.g., Town Law § 179 [fire district expenditure limits]; see generally, Local Government Handbook, op. cit., at 131-132 [school districts]; at 148-153 [voter referenda and public hearings]).
The statute at issue contains none of these hallmarks of *583 accountability. Library District trustees are appointed, there is virtually no legislative control — even where legislative review is provided, if the City or Town legislative body disapproves, the trustees’ own budget from the prior year is used— and there is no voter input. Policy therefore also supports our conclusion that the delegation of the power to tax under L 1987, ch 524 is unconstitutional.
In view of our disposition, it is unnecessary to reach the remaining issues raised by appellant.
Accordingly, the order of the Appellate Division should be reversed, with costs, and judgment granted declaring that chapter 524 of the Laws of 1987 is unconstitutional and that defendant is not under a legal duty to pay to plaintiff Greater Poughkeepsie Library District the 1991 budget contribution computed pursuant to chapter 524.
Judges Simons, Titone, Hancock, Jr., Bellacosa and Smith concur.
Order reversed, with costs, and judgment granted in accordance with the opinion herein.